LILLIE ATKINSON *et al.* V. THE J. R. CROWE COAL &
MINING COMPANY.

No. 16,004.

SYLLABUS BY THE COURT.

1. JURY TRIAL—*Title to Real Estate—Form of ·the Action.* In
an action commenced for the purpose of settling disputed
questions of title to real estate, and to recover the possession
thereof, either party is entitled to a jury as matter of right,
regardless of the form in which the action may be brought.

2. ——— *Same.* While a person was in the actual, exclusive
and peaceable possession of real estate, claiming to be the
owner thereof, another person, claiming to be the owner
of the coal and mineral in such land and to have a right
to use the surface for mining purposes, attempted to enter
thereon for such purpose, but was forcibly prevented by the
person in possession, who denied such claimed ownership of
the coal. The person out of possession then commenced a suit
to obtain a perpetual injunction to restrain the person in pos-
session from interfering with the mining and removal of the
coal. In that suit the defendant was, upon demand, denied a
trial by jury. *Held,* error.

Error from Cherokee district court; CORB A. MC-
NEILL, judge. Opinion filed May 8, 1909. Reversed.
Opinion denying a petition for a rehearing filed June
12, 1909.

STATEMENT.

THIS suit was commenced by the J. R. Crowe Coal &
Mining Company, in the district court of Cherokee
county, to obtain a perpetual injunction against Lillie
and Ed Atkinson.

The defendants insisted that the remedy sought by
the plaintiff could be obtained only in an action of
ejectment. They, therefore, demurred to the plaintiff's
petition. The demurrer being overruled, they filed an
answer and demanded a jury, which was refused, and
the case was then tried to the court upon the facts. A
permanent injunction was allowed, from which judg-
ment of the court the defendants prosecute error.

11—80 KAN.

To avoid the production of the entire petition, which is of great length, the material facts will be stated: The dispute arose over the ownership of real estate. It is conceded that the Kansas City, Fort Scott & Gulf Railroad Company was the former owner of the land in controversy, and each party claims title from this source. The plaintiff claims that the railroad company sold the land to Jeremiah Hogan, reserving to itself the coal and mineral therein, together with the right to use the surface for the purposes of exploring for such coal and mineral and for mining and removing the same from the land, and that Hogan had no other or further right or title in the land. It is further claimed that the only right in the premises possessed by the defendants is the right of Hogan, which was obtained by a sheriff's deed issued upon the sale of the land in proceedings to foreclose a mortgage given by Hogan.

The plaintiff claims to have succeeded to the rights of the railroad company, under its reservation in the deed to Hogan, by a lease from it granting the right to enter upon the land and mine and remove coal and mineral therefrom. The defendants deny that the deed to Hogan contained any reservation, but insist that he acquired the entire estate in the land from the railroad company, and that they succeeded to such estate through the sheriff's deed.

At the time this suit was commenced, and for about two years prior thereto, the defendants were in the actual possession of the land in controversy, claiming the entire estate therein and title thereto. Before the suit was commenced the plaintiff attempted to enter upon the land for the purpose of mining coal under its lease. The defendants, by force, denied it that privilege, and have ever since, by force, excluded it from the premises. This suit was commenced to enjoin such interference.

The original deed to Hogan is lost, and the record thereof is mutilated so as to render its contents uncer-

tain.   The plaintiff has never been in the actual pos-
session of the land or asserted its rights as lessee.

*William F: Sapp, Andrew S. Wilson,* and *Francis M. Brady,* for the plaintiffs in error.

*A. H. Skidmore,* and *S. L. Walker,* for the defendant in error.

The opinion of the court was delivered by

GRAVES, J.: The plaintiff freely admits that the de-
fendants own the land in controversy, subject only to
its rights as lessee to mine and remove coal and mineral
therefrom.   It merely claims an easement in the sur-
face, such as will enable it to exercise fully its rights
as lessee, and does not wish to disturb the defendants
in the enjoyment of the possession and use of the sur-
face further than is reasonably necessary to the enjoy-
ment of its own rights under its lease.   It therefore
insists that ejectment is neither an adequate nor an
appropriate remedy under the facts of this case, and
that injunction is both appropriate and adequate, and
the only proper remedy.

The defendants urge that the coal which the plain-
tiff claims to own is a part of the land which they oc-
cupy and of which they have exclusive, actual, peace-
able possession—peaceable even against the plaintiff;
that they claim to be the owners of the entire estate
in the land, including the coal and mineral, and the only
contention between them and the plaintiff is as to the
ownership of the coal; that an injunction would de-
prive them of their title to, and possession of, the coal
as completely and effectually as could be done by an
action of ejectment, and therefore they are entitled to
have the issue tried by a jury as matter of right.

Attention has been called to section 5 of the bill
of rights, which reads: "The right of trial by jury
shall be inviolate." Attention has also been called to

section 4713 of the General Statutes of 1901, which reads:

"Issues of fact arising in actions for the recovery of money, or specific real or personal property, shall be tried by a jury, unless a jury trial is waived, or a reference be ordered as hereinafter provided."

It is everywhere held that this constitutional provision preserves whatever rights of trial by jury existed at common law when the provision was adopted. We are inclined to agree with the view of the defendants. It is apparent that the real contention of the parties involves the ownership of the coal in question. If the plaintiff has an easement in the surface of the land, it is because of, and incident to, its ownership of the coal. Before a court can enjoin the defendants from interfering with the plaintiff in the use of the surface of the land for the purpose of mining coal it must determine that the plaintiff is the owner of the coal. The defendants being in the actual possession of the coal as nearly as such possession is possible, the granting of such an injunction would be the same in effect as a judgment in ejectment, as it would determine both the title and possession of the real estate in controversy. The plaintiff has never been in the possession and enjoyment of the so-called easement, and its right thereto is now being asserted for the first time. It may be conceded that injunction is a proper and ordinary remedy for the protection of owners in the enjoyment of their rights in real estate, but here this remedy is invoked for a very different purpose; its object is not to protect a right which the plaintiff has in real estate, but its purpose is to obtain thereby a title to real estate from others who are already in possession and claiming to be the owners thereof. It is true, as has been suggested, that courts of equity often examine into questions of title, not for the mere purpose of determining the question of ownership between the parties, but for the purpose of administering equitable relief concerning the use or

occupancy of the land.   Upon this point Chancellor Kent, in the case of *Abbott v. Allen,* 2 Johns. Ch. [N. Y.] 519, said:

"This court may, perhaps, try title to land when it arises incidentally; but it is understood not to be within its province, when the case depends on a single legal title, and is brought up directly by the bill.   The power is only to be exercised in difficult and complicated cases, affording peculiar ground for equitable interference." (Page 524.)

In volume 24 of the Cyclopedia of Law and Procedure, at page 109, it is said:

"While courts of equity have jurisdiction to protect and enforce equitable titles, and may in certain cases try suits to quiet title or remove cloud without the intervention of a jury, questions as to the legal title to land are of right triable by jury, and this right can not be abrogated by statute·or avoided by bringing an action which is in effect an action of ejectment in the form of a suit in equity."

The rule that actions for the trial of title to real estate shall be tried to a jury has always been favored and with practical unanimity has been upheld by the courts.   The difficulty encountered in the enforcement of this rule consists chiefly in determining whether or not the action under consideration comes within the rule.   The test upon this question which has been generally followed is that, where the real object of the action, whatever its form, appears to be to settle a disputed question of title, then either party may demand a jury as matter of right; if, on the other hand, the purpose is to obtain proper equitable relief, then the chancellor may administer it, even though it involves an examination of title.   In the case of *Martin v. Martin et al.,* 118 Ind. 227, it was said:

"It is not every cause of action which the pleader styles an action of ejectment or to quiet title that entitles the parties to a trial by jury; nor will the prayer for relief have any controlling influence in determining whether or not a jury may be called.   The court will

look to the substantial averments of the complaint or cross-complaint, as the case may be, and from the facts so averred determine whether the action is one of equitable or common-law jurisdiction, and, if the former, refuse a trial by jury." (Page 236.)

In the case of *Spencer et al. v. Robbins et al.,* 106 Ind. 580, it was said:

"Where the purpose of the action is primarily to establish an equitable right to land and acquire a legal title through such right by the decree of a court, as by the specific enforcement of an agreement, the reformation of a deed, or the establishment of a trust, etc., the case is of equitable cognizance." (Page 588.)

In the case of *Angus v. Craven,* 132 Cal. 691, it was said:

"Courts, however, in guarding the constitutional rights to a jury trial, have repeatedly held that where the suit should have been, and in substance is, an action for the recovery of the possession of land, the right of a defendant to a jury can not be defeated by the mere device of bringing the action in an equitable form. And so it has been held that the right to a jury is not defeated where, at the commencement of the action, the defendant, and not the plaintiff, was in the actual possession of the premises involved; and it has also been held that where the defendant had been for a long time in the actual possession, and the plaintiff had ousted him, the plaintiff, by first bringing his action to quiet title, could not, by such inversion of parties, avoid the defendant's right to a jury, but that the action should be treated as substantially an action to recover possession." (Page 696.)

(See, also, *Newman v. Duane,* 89 Cal. 597. For other cases on this subject generally, see 3 A. & E. Ann. Cas. 248, where they are collected in a note.)

The petition in this case is full and complete in its statement of facts. It is not difficult to ascertain from it what the plaintiff wants. It wants the coal. Its right to take the coal depends upon ownership. The ownership is strenuously denied; indeed the denial is asserted by force and arms. The defendants are in the actual

possession of the land and claim to have full title thereto. They are in a position to protect the coal by preventing the plaintiff from removing it. The important question, as it seems to us, is, Who owns the coal? If this question is answered, then the whole controversy will be settled; but nothing can be settled until it is answered. The coal is specific real property as much as the surface. Together they constitute the entire estate in the land. The plaintiff wants to try out the question of title to the coal without a jury, and then take possession of it under the protection of an injunction which will prevent the opposition of the defendants. This avoids the real merits of the controversy. It gives undue prominence to the question whether or not the plaintiff has an easement under which it may mine coal, and treats the ownership of the coal as a minor and comparatively unimportant inquiry. By such a proceeding the defendants are deprived of a right given to them both by the constitution and the statute. This can not be sustained.

The judgment of the district court is reversed, with direction to proceed in accordance with the views herein expressed.

---

OPINION DENYING A PETITION FOR A REHEARING.

The opinion of the court was delivered by

GRAVES, J.: A petition for rehearing has been filed in this case, wherein it is urged that the opinion herein does not contain an order dissolving the temporary injunction granted by the probate judge when the action was commenced. It is also suggested that because of this omission the plaintiff is continuing to operate the coal-mines upon the premises in controversy, to the great loss and injury of the defendants. It is further stated that the plaintiff is acting in this respect under the assumption that the temporary order furnishes complete protection for such conduct.

It was the view of the court when the opinion was

formulated that the order therein made would vacate and set aside all the injunction orders which had been made in the action, and the intention was that it should have that effect. The final decree contains the following language: "It is therefore by the court considered, ordered, adjudged and decreed that the temporary injunction heretofore issued herein be, and it is hereby made, permanent and perpetual, that is to say," etc., indicating an intention to adopt and make the temporary order a part of the final judgment. If the temporary injunction continued to be operative until the final decree was entered, then it became a part of such decree, and was annulled by the order of reversal. No further order, therefore, seems to be necessary.

With this explanation the petition is denied.