JAMES M. RUNKLE, APPELLEE, v. DANIEL T. WELTY, APPELLANT.

FILED APRIL 23, 1910. No. 15,961.

1. **Boundaries: ESTABLISHMENT: PLEADING: ANSWER.** In an action in which the location of the division line between the real estate of the respective parties is in issue, an allegation in the answer that a surveyor located the line, and that the plaintiff has ever since such location acquiesced in the line as located, and that defendant built his fence on said line and improved his land "up to said line as the boundary between them, and has so continued ever since," does not state a defense, without the allegation that the parties agreed upon the line so located as the boundary line, or that the same was so located not less than ten years prior to the commencement of the action.

2. ———: ———. In determining the boundaries of land depending upon the true center of a section line, and various surveys by different surveyors disagree as to the true center, the survey that takes the section corners connected by said line as the basis of the survey, those corners being then found by the monuments of the government survey, will control, rather than a survey made later when the government monuments are not found, and the necessary section corners are found by measurements from distant monuments. When monuments fixed by the government survey can be found they will control as to the location of the section corners.

APPEAL from the district court for Furnas county: ROBERT C. ORR, JUDGE. *Affirmed.*

*Morlan, Ritchie & Wolff,* for appellant.

*Perry, Lambe & Butler, contra.*

SEDGWICK, J.

The question involved in this case is as to the location of the division line between the lands of the plaintiff and those of the defendant. The plaintiff owned and occupied the S. E. ¼ of the S. W. ¼ and lots 5 and 6, and the defendant the N. ½ of the S. E. ¼ of section 32, township 4 N., range 24 W., in Furnas county. The plaintiff alleged that he was the owner and entitled to the possession of the tract of land in controversy, being 1 chain and 5 links in width at north end, and 55 links in width at south end, and being a part of lot 6, adjoining defendant's land immediately west and along the west end thereof, and that the defendant wrongfully detained the possession from him. For answer the defendant denied generally the allegation of the plaintiff, and alleged that in April, 1894, there was a dispute between the plaintiff and defendant as to the boundary line between their lands, and that the county surveyor, then acting for the plaintiff and defendant, "made an actual survey of said lands, both paying the expenses thereof, and on said last mentioned survey said surveyor located said road and line between plaintiff and defendant about four rods east of

its former location. On the completion of said survey
the plaintiff built his fence on the west side and the de-
fendant on the east side of said highway so located by
said surveyor last mentioned, and improved their respect-
ive lands up to said highway as the boundary between
them, and have so continued ever since." As this action
was begun on the 22d day of August, 1903, which was
within ten years of the time of the alleged location of
the boundary line by the county surveyor, it may be
questionable whether this part of the answer stated a
defense (it fails to allege either an agreement as to the
division line or adverse possession for ten years), but it
was so treated by the court, and is now so treated by the
parties. Upon the trial in the district court the jury
found a verdict in favor of the plaintiff, and the defend-
ant has appealed to this court.

1. The first matter discussed in the brief of the de-
fendant is the location of the line by the county surveyor,
as alleged in his answer, and as to the acquiescence of the
defendant in the supposed boundary so established. We
do not find any reply in the record, but the case appears
to have been tried as though the allegations of the answer
were denied. It seems to be agreed by all parties that
as late as the spring of 1894 the true location of the
division line was in dispute, and that at that time the
county surveyor, Phoebus, made the survey upon which
the defendant relies. The defendant testifies that while
he was working upon the land near the supposed line, in
the spring of 1894, the plaintiff complained that the de-
fendant was working on his, the plaintiff's, land, and that
the true line was farther east than where the defendant
was at work, and that there was a somewhat strenuous
dispute between them; that the plaintiff became very
earnest and very positive, and that finally he, the defend-
ant, proposed that they have the land surveyed by the
county surveyor; that the plaintiff consented to this, and
that the county surveyor made the survey accordingly and
located the true line; that thereupon he, the defendant,

called attention of the plaintiff to the line as located by the surveyor and that the plaintiff said that he was satisfied with it. This evidence appears to be relied upon as establishing an agreement between the plaintiff and the defendant to adopt the line so found by the surveyor as a division line between them, and the parties have introduced considerable evidence as to whether or not the plaintiff, after this survey, continued to recognize this as the true line. The plaintiff, however, positively denied that he ever consented to recognize the line then located as the division line. He testified that he told the defendant at the time that the survey was not right and that the line should be much farther east. There is no doubt that, when there is a dispute in regard to the true location of an uncertain line of division, the parties may settle that dispute and fix the boundary line by agreement. A parol agreement, if afterwards acquiesced in and acted upon, is sufficient for that purpose, although the possession of the land to the line so fixed may not have been for the full statutory period. The most that can be said for the defendant's contention is that the evidence upon this point was quite conflicting and presented an issue for the determination of the jury.

2. It appears to be contended in defendant's brief that the evidence is not sufficient to support the verdict of the jury as to the location of the true boundary line. It appears that there were four different surveys made involving the location of the line in dispute. The first in 1880 by Mr. Hasty, who was then county surveyor of Furnas county, the second in 1883 by Mr. Hill, the county surveyor at that time, the third in 1894 by Mr. Phoebus, then county surveyor, and the fourth in 1900 by Mr. Hasty who was again county surveyor. There were other surveys at different times that had more or less relation to section 32 or some part thereof. The plaintiff claims that the surveys made by Mr. Hasty were correct, and the defendant relies upon the surveys made by Hill and Phoebus. The central line of the section running north

and south, as established by the Hasty survey, forms the
east boundary of the tract in dispute, and that line, as
established by the Phoebus survey, forms the western
boundary of the land in dispute. All parties agree as to
the location of the south quarter corner of section 32.
All these surveys in determining the location of the north
quarter corner of the section run west from the north-
east corner of the section. To find this northeast corner
of the section the Phoebus survey, following Mr. Hill,
started from the southeast corner of the section and ran
a line north, and found, as he says, by measurement in-
dicated by the Hill survey the markings of the northeast
corner of the section made by Mr. Hill. He then ran a
line west between sections 32 and 29, locating the quar-
ter corner by the Hill measurements. None of these
measurements of the north line of the section seems to
correspond with those made by the government survey in
1871. The Hasty surveys make this line 1 chain longer,
and the Phoebus survey 1.63 chains. The north quarter
corner established by the Phoebus survey is seven or
eight rods farther west than that established by the Hasty
survey. This discrepancy in locating the north quarter
corner of the section is the cause of this litigation. Mr.
Hasty in making his survey started at the northeast cor-
ner of the section. He testified that at his first survey in
1880 he found the mounds and pits of the government
survey at this corner of the section distinctly marked,
and in this he is well supported by at least two witnesses
who assisted him in making the survey, and by other wit-
nesses. He also found the northwest corner of the sec-
tion and located the north quarter corner by dividing
equally the distance between the two corners. The depo-
sition of Mr. Anselmo B. Smith was taken by the plaintiff
and used upon the trial. He has had many years expe-
rience in practical surveying and was considered by all
parties to this litigation to be entirely competent and
thoroughly qualified in his profession. He testifies that
in 1879 or 1880 he surveyed for the location of the town

of Cambridge, which is located immediately north of the section 32, and that in doing so he ascertained the true location of the northeast corner of section 32, and then found the government mounds and pits plainly marked. Again, a few days before his evidence was taken in 1905, upon examination of the surveys that had been made, he considered the corner as located by the Hasty survey to be the correct corner, and an addition to the town of Cambridge was by him laid out with reference to the corner so located.

We think this evidence fully supports the finding of the jury, which must have been that the corner as established by the Hasty survey is the true northeast corner of section 32. It follows that in the Hill survey and the Phoebus survey there was a mistake in the location of the northeast corner of this section, which resulted in a mistake in locating the north and south center line. Indeed, the evidence is so strong and so satisfactory upon this point that it is doubtful whether any other verdict than that returned in this case could be allowed to stand.

3. Several instructions given by the court are objected to, and complaint is made of the refusal to give certain instructions asked by defendant. These suggestions are not much discussed or insisted upon in the brief, and we do not find any errors in the instructions.

Some of the methods pursued by counsel in the introduction of evidence are more or less confusing; but, if we have succeeded in getting a correct understanding of the record, the parties have had a fair trial and the verdict is supported by the evidence.

The judgment of the district court is therefore

AFFIRMED.