No. 20,498.

ANNA HOUSTON et al., *Appellants,* v. HENRY A. GOEMANN and KATHERINE GOEMANN, *Appellees.*

### SYLLABUS BY THE COURT.

1. CANCELLATION OF DEED—*Equitable Action.* The proceedings considered, and held that the form and the essential nature of the action characterize it as an equitable one for the cancellation of a deed on the ground of undue influence.

2. SAME—*Trial by Jury Not Demandable.* In an action of the character described, a trial by jury is not demandable as a matter of right.

3. CANCELLATION OF DEED—*Undue Influence—Statements of Grantor Competent Evidence.* In an action by the heirs of a grantor to cancel a deed on the ground of undue influence exercised over the grantor by the grantees, who were not related to him, statements of the grantor, both before and after execution of the deed, showing his feelings toward his relatives and toward the grantees, his desire and intention with respect to the disposition of his property, the motives which actuated him in making the deed, the details of the transaction culminating in the deed and the reasons for them, and other statements revealing the operation of his mind in other business and property relations with the grantees, may be received in evidence, when not too remote, as the basis for an inference respecting the grantor's freedom from restraint at the time the deed was made.

Appeal from Barber district court; PRESTON B. GILLETT, judge. Opinion filed January 6, 1917. Affirmed.

*Samuel Griffin, Keith S. Simpson,* and *Seward I. Field,* all of Medicine Lodge, for the appellants.

*A. L. Noble,* of Winfield, and *J. N. Tincher,* of Medicine Lodge, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was one by the heirs of Albert M. Houchin, deceased, against the grantees in a deed of real estate executed and delivered to them by Albert M. Houchin in his life time. The plaintiffs claimed the action was one to recover specific real estate, and demanded a jury trial. The defendants claimed the action was one to cancel the deed on the ground of undue influence. The district court took this view, but called a jury to determine the question of undue influence. Special findings were returned favorable to the defendants, which the court adopted, and judgment was entered accordingly. The plaintiffs appeal, and the principal error assigned is that the plaintiffs were denied a jury trial.

The petition covers more than eight pages of the abstract. It states that for many years before his death the defendants lived with Albert M. Houchin on the ranch conveyed by the deed, and in his home in the city of Medicine Lodge, as members of his household, and on terms of the closest and most confidential intimacy. Then follow allegations of undue domination by the defendants over the mind of Albert M. Houchin, and his susceptibility and subservience to such domination, resulting from causes stated in detail, and eventuating in the deed. The petition then contains the following allegations and prayer:

"Plaintiffs further state that upon the execution of the said deed in the manner aforesaid, the said defendants did gain complete control and possession of all of said real and personal property on said ranch. Plaintiffs state that said deed is not the deed of the said Albert M. Houchin as it purports to be and is utterly void and conveys no title to the defendants and is not the free and voluntary act of the said Albert M. Houchin, but was made and delivered by the said Albert M. Houchin in pursuance of and under the direction of the said defendants, for the sole and express purpose of fraudulently acquiring the title to said real estate by the means and in the manner above set forth; and that the defendants have no title whatever to the said real estate or any part thereof. . . . Plaintiffs further state that they are the sole and only heirs at law of the said Albert M. Houchin, and as such sole and only heirs at law are the owners of all the said real estate; that the said defendants have no right, title, estate or interest therein, and that the said purported deed of the said Albert M. Houchin should be cancelled, set aside and held for naught, and that these plaintiffs should be decreed to be the owners in fee simple of all of the said real estate.

"Wherefore, plaintiffs pray judgment against the said defendants, and each of them that said deed be set aside, annulled, concelled and held for naught; that said defendants be declared to have no right, title or interest in or to said real estate or any part thereof; that the said plaintiffs be decreed to be the absolute owners in fee simple, of all of the said real estate, and that they have judgment against the defendants, and each of them, for the immediate possession of all of said real estate, for the costs of this action, and for all proper relief."

While forms of action and the distinction between actions at law and suits in equity have been abolished, and a single remedy in the form of a civil action has been provided, by means of which any desired relief may be obtained, essential differences have not been obliterated and a jury is not demandable as a matter of right in those civil actions which are grounded on equitable rights and in which equitable relief is sought.

The deed was made in February, 1914. Albert M. Houchin died in October, 1914. The petition was filed in January, 1915. Familiar characteristics of a petition in ejectment are wanting. While the petition stated that on execution of the deed the defendants gained complete control and possession of the ranch, it was not stated that the defendants were in possession, or that the plaintiffs were entitled to possession, or that the defendants unlawfully kept the plaintiffs out of possession. The first indication that the purpose was to recover specific real estate appeared in the prayer, and the prayer for immediate possession was inserted between the prayer for specific equitable relief and the prayer for general relief, as if the matter of awarding possession were an incident to a decree making a complete determination of the controversy.

Although the petition contained general allegations that the plaintiffs were owners of the land and that the defendants had no title to or estate or interest in the land, the specific allegations presented the facts on which the general assertions were based. The facts stated disclosed title in the defendants under a deed perfectly good unless and until set aside, and which could not be set aside unless under all the circumstances it were equitable to do so. Conceding the deed to be the product of undue influence, the court would not, under established principles, cancel it until an inquiry was instituted into the situation of the parties, the need, if any, to restore benefits received,

and a variety of other matters upon which equitable relief by way of cancellation depends.

"Deeds or contracts procured by the exercise of undue influence are voidable only, and not void. They are capable of ratification, and are *prima facie* good and valid until successfully impeached. The party seeking to avoid an instrument so procured must seek his remedy in a court of equity, treating the influence to which he was subjected as a species of constructive fraud. His remedy is not at law. But there is no doubt whatever that a court of equity has jurisdiction to annul, cancel, or set aside any deed or other grant obtained in this manner from a person who would not have executed it if left free to make his own decision, provided a proper and timely application is made, and supported by due proofs, by the persons aggrieved. Thus, heirs or devisees may maintain a suit in equity to set aside a deed of land obtained from their ancestor by undue influence practiced upon him." (1 Black on Rescission and Cancellation, § 239.)

The plaintiffs' right to possession and enjoyment of the land as owners depended on their right to have the deed canceled. What they desired was the verdict of a jury on their right to cancellation. That was a subject of equitable cognizance, and the request for a jury trial as in an action at law was properly denied. The principles involved are sufficiently illustrated in the following cases, several of them being cancellation cases: *Maclellan v. Seim,* 57 Kan. 471, 46 Pac. 959; *Mills v. Hartz,* 77 Kan. 218, 94 Pac. 142; *Hospital Co. v. Philippi,* 82 Kan. 64, 107 Pac. 530; *Nelson v. Schoonover,* 89 Kan. 388, 131 Pac. 147; *Akins v. Holmes,* 89 Kan. 812, 133 Pac. 849; *Kuhn v. Johnson,* 91 Kan. 188, 137 Pac. 990; *Appling v. Jacobs,* 91 Kan. 793, 139 Pac. 374.

The plaintiffs rely on the cases of *Atkinson v. Crowe,* 80 Kan. 161, 167, 102 Pac. 50, 106 Pac. 1052, and *Gordon v. Munn,* 83 Kan. 242, 111 Pac. 177. As the court said in the case of *Akins v. Holmes,* supra:

"In each of those cases the contest was between rival claimants to ownership, and the real issue was whether the title of the one party or the title of the other was such as to require an award of the property to its proponent. The court held that the form in which this issue was cast should not control the method of trial, but that the essential nature of the controversy should determine whether or not a jury trial ought to be granted." (p. 815.)

In this case the action was one by the heirs of a vendor, who stood in his shoes, to set aside his deed on the ground of undue influence practiced by the grantees. The right claimed by the

plaintiffs and the wrong charged to the defendants characterize the action as one for cancellation. The essential nature, and indeed, as indicated above, the form of the action, a portion of the prayer of the petition being eliminated, are purely equitable.

It is said that the plaintiffs claimed under an equitable title, that they were required by section 619 of the civil code to state the facts on which such title was based, and that if the short statutory form of petition 'in ejectment had been employed, no opposition to a jury trial would have been interposed. The facts stated in the petition did not disclose an equitable title. They disclosed a legal title, derived by operation of the statute of descents and distribution, enjoyment of which was frustrated by a deed procured by undue influence exercised over the mind of their ancestor. The purpose was not to settle disputed claims of heirship, but to remove an impediment to the enjoyment of inherited property. While the answer contained a general denial, and so as a matter of form put in issue the capacity of the plaintiffs to challenge the deed, the substantive issue was the voidable character of the deed, and the right to invoke the equitable remedy of cancellation. If the statutory form of petition in ejectment had been used, and a jury had been called on the theory the action was one at law, no doubt the court, when the statement of the case or the production of evidence disclosed the true equitable nature of the suit, would have exercised the power to determine the controversy for itself, as the court did in the replevin action under review in the case of *Akins v. Holmes*, 89 Kan. 812, 133 Pac. 849.

At the trial witnesses were permitted to testify to conversations with the deceased and conversations between the deceased and others, occurring both before and after execution of the deed, and relating to his business and personal affairs. In some of these conversations the deceased indicated his affection for the defendants and his feelings toward his relatives; indicated his desire and his intention with respect to the ultimate disposition of this property; indicated the motives which had actuated him in making the deed; gave the details of the transaction and the reasons for them, and otherwise revealed the operation of his mind with respect to the subject of the present litigation. In other conversations narrated by

Moore v. Manufacturing Co.

the witnesses, in which the defendant, Henry A. Goemann, participated, the deceased displayed unimpaired ability to exercise unrestrained control over his business and property. All this evidence furnished the basis for an inference respecting the mental subordination and constraint of the grantor at the time the deed was executed, and was rightfully received.

"The existence of undue influence or deception involves incidentally a consideration of the testator's *incapacity to resist pressure* and his *susceptibility to deceit,* whether in general or by a particular person. This requires a consideration of many circumstances, including his state of affections or dislike for particular persons, benefited or not benefited by the will; of his inclinations to obey or to resist these persons; and, in general, of his mental and emotional condition with reference to its being affected by any of the persons concerned. All utterances and conduct, therefore, affording any indication of this sort of mental condition, are admissible, in order that from these the condition at various times (not too remote) may be used as the basis for inferring his condition at the time in issue. This use of such data is universally conceded to be proper. . . . Where the question is raised whether the testator signed the will understandingly .(usually in cases of alleged undue influence), the fact of a *previous or subsequent understanding* of its terms or of a satisfaction with them is relevant . . . to show a comprehension of its terms at the time of execution; and subsequent ignorance or dissatisfaction could be used in the same way. The argument is equally applicable to the execution of deeds and other documents." (3 Wigmore on Evidence, §§ 1738, 1739.)

The judgment of the district court is affirmed.