GEORGE FOLTZ, APPELLEE, v. FLOYD H. F. BRAKHAGE ET AL., APPELLANTS.

36 N. W. 2d 768

Filed April 14, 1949. No. 32583.

*Frederick J. Patz,* for appellants.

*Perry & Perry,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

This is an action in ejectment brought by George Foltz, appellee, against Floyd H. F. Brakhage and Clarice Brakhage, appellants, to recover possession of a tract of land south of and adjacent to the north line of a quarter section of land owned by appellee.

Appellee alleged that he was the owner and entitled to possession of the southwest quarter of Section 11, Township 10 North, Range 5 East, of the 6th P. M., Lancaster County, Nebraska; that appellants unlawfully withheld possession since the 27th day of November, 1944, of a part thereof, described as: Commencing at the northeast corner of the southwest quarter, thence south along the east line thereof a distance of 24 feet, thence approximately west to a point in the west bound-

ary line of said quarter section 71.8 feet south of the northwest corner thereof, thence north 71.8 feet to the northwest corner, thence east to the place of beginning; claimed damages in the sum of $1,000; and asked to recover possession and damages.

Appellants denied that appellee was the owner of the land last described and claimed that they were the owners thereof by deeds and adverse possession; alleged that a fence had been constructed along the south boundary of the land last described, and for more than 40 years had been recognized and treated by all the owners of the southwest quarter and the northwest quarter of said Section 11 as the true line between the two quarters of the west half of that section; that the owners had occupied and used the land relying upon the fence as the north line of the southwest quarter and as the south line of the northwest quarter of said section; that appellee was estopped from claiming otherwise; that the claim of appellee constituted a cloud on the title of appellants to the disputed strip, and ask that the title thereto be quieted in appellants.

Appellee denied the claims of appellants and asserted that while Carl Ninneman, under whom appellants claim, was the owner of the northwest quarter of Section 11, he disclaimed ownership of any land in the southwest quarter thereof, and a survey was made establishing the true line with his consent; that while the west half of the section was owned by one person, appellee purchased all of the southwest quarter and received a conveyance thereof from the owner; that thereafter the same person as owner sold and conveyed the northwest quarter of the section to appellants, at which time they had knowledge of all of the facts, and knew that appellee had acquired title to all of the southwest quarter; that later in an attempt to defraud appellee, the appellants secured a pretended deed to the land in dispute from Carl Ninneman and his wife, and caused it to be recorded; that this constituted a cloud

on the title of appellee, and he asks to have his title to the disputed strip quieted and confirmed.

This case was by agreement of the parties transferred. to the equity docket, trial was had to the court without a jury, and the court found that Bernice C. Butler and his wife were the owners of the west half of said Section 11 and conveyed all of the southwest quarter to George Foltz and John Jennes, and thereafter John Jennes conveyed all of his interest therein to appellee, who was at the time of commencement of this action the owner of the whole of the southwest quarter, and therefore the owner of the disputed strip; that at a later date Bernice C. Butler and his wife conveyed only the northwest quarter of the section to appellants; that appellee was entitled to have his title quieted, to a judgment of ejectment, and to recover nominal damages. A judgment was entered in accordance with the findings. The appeal is from that judgment.

Ejectment is an action at law and triable to a jury, unless the right is waived, notwithstanding any equitable matters presented in the case. § 25-1104, R. S. 1943; 31 Am. Jur., Jury, § 18, p. 568; 18 Am. Jur., Ejectment, § 116, p. 93; Peterson v. Sucro, 93 F. 2d 878, 114 A. L. R. 890; Atkinson v. J. R. Crowe Coal & Mining Co., 80 Kan. 161, 102 P. 50, 39 L. R. A. N. S. 31, 18 Ann. Cas. 242; Jacobs v. Goodrich, 90 Neb. 478, 134 N. W. 171. The effect of the stipulation by the parties for a transfer of the case to the equity docket was consent to a trial of the case to the court without a jury. The findings of a court in a law action have the effect of a verdict of a jury and will not be interfered with unless they are clearly wrong. The weight of evidence or credibility of witnesses is not a concern of this court in the review of such a case except to determine that the findings and judgment are supported by evidence and are not contrary to law. Barnhart v. Henderson, 147 Neb. 689, 24 N. W. 2d 854; State v. Neimer, 147 Neb. 284, 23 N. W. 2d 81.

The appellee has shown a complete chain of title to all of the southwest quarter of Section 11, Township 10 North, Range 5 East, of the 6th P. M., Lancaster County. There is no claim that there is any defect or failure in the continuity of his paper title as disclosed by the public records of the county, commencing with the patent from the United States and continuing to the deed from Bernice C. Butler and Elcie Butler to him and John Jennes, and the deed from him to appellee. The title thereto which he claims is further evidenced by proceedings in the district court for Lancaster County to quiet the title, and a decree on June 17, 1929, quieting title thereto, against the claims of all persons, in Luther C. Smith, the immediate grantor of Bernice C. Butler and Elcie Butler. The record title of the appellee to the southwest quarter of this land is definitely established.

There is evidence that the quarter section lines of Section 11 had been surveyed in April of 1936, at the request of Bernice C. Butler, and May 7, 1947, on the order of the appellant, Floyd Brakhage, and on June 7, 1947, a further survey was made which determined the north line of the southwest quarter of Section 11. The northwest corner and the northeast corner of the southwest quarter and the center of the section were found. A straight line was run between the northeast corner and the northwest corner of the southwest quarter, and this established the north line of the southwest quarter of this section. These surveys in reference to location of the north line of the southwest quarter and the fence on the south of the disputed strip are shown on a plat which accurately depicts the measurements from the north line of the southwest quarter to the fence line. The distance at the east line is 24 feet, and the distance 33 feet east of the west line is 71.8 feet. The fence line on the south of the disputed strip and the disputed area are each within the southwest quarter of the section. This section was surveyed in 1883, and the markers left

by the United States surveyors in 1858-1860 were located according to the field notes on file in Lancaster County, and the county surveyor followed the 1883 survey and from the field notes ascertained definitely that the corners recognized by him followed the original United States government survey. The approved method was followed in locating the center of the section and the north line of the southwest quarter of the section in question. Original corners, as established by the government surveyors, if they can be found, or the places where they were originally established, if they can be definitely determined, are conclusive on all persons owning or holding with reference thereto, without regard to whether they were located correctly or not, and must remain the true corners by which to determine the boundaries. 11 C. J. S., Boundaries, § 11, p. 552; Runkle v. Welty, 86 Neb. 680, 126 N. W. 139; 43 U. S. C. A., §§ 751, 752.

The title to the southwest quarter was quieted by decree of court on June 17, 1929, in Luther C. Smith. He and his wife conveyed it by warranty deed recorded February 17, 1931, to Bernice C. Butler and Elcie Butler; they conveyed it by warranty deed on December 30, 1943, to appellee and John Jennes; and Jennes and his wife on March 24, 1944, conveyed all their interest therein by warranty deed to appellee. Bernice C. Butler and Elcie Butler, when they conveyed the southwest quarter to appellee and John Jennes, were the record owners of all of the west half of Section 11, and were in exclusive possession thereof. Bernice C. Butler was the common owner of the southwest quarter and the northwest quarter of Section 11, and, with his wife, in the exclusive possession thereof from March 28, 1942, until the southwest quarter was sold on October 5, 1943, to appellee and John Jennes, and he could sell any part of the west half that he saw fit, and he did sell all of the southwest quarter as above stated. His grantees bought at auction sale, and the land sold was the southwest quarter, 160 acres, by the acre, $87.00 an acre, a total of $13,920.

Butler could not hold adversely to himself, and during the time he was a common owner of the northwest quarter and the southwest quarter of Section 11 his possession of one was in nowise adverse to his ownership of the other. When the owner of two contiguous tracts of land conveys one of the tracts to a grantee, and subsequently conveys the other tract to a different grantee, in a contest between the grantees concerning the boundary line between the two tracts, the second grantee cannot for the purpose of establishing title by adverse possession against the prior grantee tack his possession to that of the common grantor. Goozee v. Grant, 81 Neb. 597, 116 N. W. 508; Sluyter v. Schwab, 73 Neb. 370, 102 N. W. 757; 2 C. J. S., Adverse Possession, § 130, p. 687.

When the appellee and John Jennes bought the southwest quarter of Section 11, Carl Ninneman was not in possession of any part of Section 11, and had not been since about October of 1941. He had no claim to any part of this land of record, and made no claim of which the purchasers had any notice or knowledge. The equities strongly favor appellee.

A record title to the northwest quarter of Section 11 originating with patent from the United States and continuing to Carl Ninneman is shown. He and his wife on October 22, 1941, conveyed this land by warranty deed to The Security Mutual Life Insurance Company, together with all the tenements, hereditaments, and appurtenances thereunto belonging, and they then surrendered possession and have not since had or claimed any possession, control, use, benefit, rights to or responsibility for, any land in Section 11, except that they gave for a nominal consideration of $5 a pretended deed to appellants on July 18, 1947, for any "interest in this strip of land which may not heretofore have been conveyed by us." The offer in evidence of this instrument was on the objection of the appellee excluded, and the appellants have made or discussed no assignment of error because of its exclusion.

The appellants failed to show any record or paper title in them to any part of the land in dispute.

The only land in Section 11 owned by appellants was the northwest quarter of Section 11 acquired by them by deed dated November 25, 1944, from Bernice C. Butler and Elcie Butler. They intended to and did sell and convey to appellants only the northwest quarter, and no part of the southwest quarter, and they made no representation to their grantees as to the true line between these quarter sections. The record does not show that any owner of the northwest quarter prior to Bernice C. Butler at any time made any claim, adverse or otherwise, to any part of the southwest quarter until 1936 or 1937, at the time when Bernice C. Butler told Carl Ninneman that the fence line was not in the proper place and he would like to change it, and Ninneman said if it was not where it belonged it was satisfactory with him to straighten it out. Butler then had a survey made by the county engineer to determine the true boundary. He told Ninneman the result and the location of the true line between these quarter sections of land, and instructed his tenant to move the fence north to the true boundary line. Ninneman prevented this being done. "I told him to stay off till I found out whose it was." That was in the spring of 1936 or 1937, and out of that a lawsuit developed. He was sued by Butler "about the fence line." Until that time he thought the northwest quarter extended south to the fence line, and never claimed he had any interest in the southwest quarter. What he bought was described in the deed from The Security Mutual Life Insurance Company as the northwest quarter of Section 11, and he thought the deed to the northwest quarter extended "to the fence line. * * * I thought that all belonged to the Northwest Quarter." The first time he told anyone he owned any part of the southwest quarter was after he had trouble with Butler in 1936 or 1937. "I figured it was mine and I was going to get something out of it some day." That was the earliest time the

evidence shows anyone claiming to hold the disputed land by adverse possession.

The statute of limitations will not run in favor of an occupant of real estate unless the occupancy and possession are adverse to the true owner and the possessor has and has manifested the intent and purpose to claim title for himself. against the true owner. Title to land by adverse possession must be proved by actual, open, hostile, and continuous.possession under claim of ownership for the full statutory period. Conkey v. Knudsen, 135 Neb. 890, 284 N. W. 737; Ryan v. City of Lincoln, 85 Neb. 539, 123 N. W. 1021.

Carl Ninneman conveyed to The Security Mutual Life Insurance Company on October 22, 1941, the northwest quarter "together with all the Tenements, Hereditaments and Appurtenances thereunto belonging" and surrendered possession of all land he claimed in Section 11 in 1941, "Soon after the deed was executed" and before March of 1942, and he did not thereafter regain or have possession or assert any right thereto, except he executed the pretended deed to appellants for the disputed area on July 18, 1947. The Security Mutual Life Insurance Company, his grantee, conveyed the same land and rights transferred to it by the Ninneman deed to Butler, and he conveyed the identical property to the appellants, and this vested title to the northwest quarter in them.

The appellants substantially disclaimed title by adverse possession. Their only claim is by virtue of the deed from Bernice C. Butler and Elcie Butler to them, and the pretended deed from Carl Ninneman and Marie Ninneman. The record does not show any title or right of possession of the disputed land in appellants at any time.

AFFIRMED.