DAN ROGNRUD, d.b.a. DAN ROGNRUD REALTY, AND
ANOTHER v. JULIA H. ZUBERT AND OTHERS.

165 N. W. (2d) 244.

February 21, 1969—Nos. 40842, 41252, 41253.

*James L. Donaghue,* for appellants.

*Fudali, Remes & Fudali* and *Richard H. Fudali,* for respondents.

Heard before Knutson, C. J., and Nelson, Rogosheske, Sheran, and Frank T. Gallagher, JJ.

ROGOSHESKE, JUSTICE.

Defendants appeal from an order dismissing the jury, and from a judgment granting plaintiff Oliver R. Ogdahl specific performance of an agreement to convey real estate and awarding plaintiff Dan Rognrud $2,500 for a real estate broker's commission.

In May 1964, after observing a "For Sale" sign on a vacant lot on the southwest corner of 75th Street and Cedar Avenue in the city of Richfield, Rognrud telephoned Mrs. Julia H. Zubert — who substantially owned and controlled Zubert Construction Company, the record owner of the lot — and discussed its availability with her. On June 4, 1964, pursuant to a request by Mrs. Zubert, Rognrud brought her a written offer executed by Ogdahl to purchase the property for $25,000, subject to certain contingencies. This offer was accompanied by a $500 earnest money note payable at "Closing Date" to Rognrud as Mrs. Zubert's agent. This was in accord with what the undisputed testimony establishes as the customary practice of real estate brokers acting for sellers of real property.

Mrs. Zubert rejected this offer but authorized Rognrud to draft a counteroffer to sell the property to "Oliver R. Ogdahl or assigns" for $30,000. On June 30, 1964, she signed this counteroffer, which was drawn on a printed standard "PURCHASE AGREEMENT" form. Subsequently, Ogdahl also signed this agreement and redelivered the earnest money note to Rognrud.

By the terms of this agreement, Mrs. Zubert promised to sell the property and Ogdahl promised to buy it subject to four contingencies, three of which were substantially identical to those in Ogdahl's June 4th offer and the fourth of which was added at Mrs. Zubert's request. These were:

"1. Subject to the buyer obtaining a special use and building permit to construct at least a 22 unit apartment building from the Village of Richfield.

"2. Subject to the buyer obtaining satisfactory financing for said 22 unit apartment building.

"3. Subject to normal soil conditions, meaning no extra footings, foundations or piling will be necessary to construct said 22 unit apartment building.

"4. This offer is subject to purchaser completing the contingencies mentioned above on or before August 1, 1964, after which time this contract shall become null and void unless renewed by Purchaser."

Each of these contingencies could be satisfied by "purchaser and agent."

On July 1, Rognrud and Mrs. Zubert entered a separate written agreement providing that she would net $27,500 of the purchase price and that Rognrud would be paid the remaining $2,500 as his commission.

On July 29, when it had become apparent that plaintiffs would be unable to satisfy all of these contingencies within the original 30-day period, Mrs. Zubert signed an agreement extending the time for performance by 30 days. Plaintiffs testified that all of the conditions were satisfied before this extension expired, and it is undisputed that Mrs. Zubert provided Ogdahl with a Torrens certificate number on the property in early September. At this point, however, the parties' versions of what transpired diverge. Plaintiffs contend that Rognrud tried a number of times during September, October, and November to get Mrs. Zubert to close the transaction but that she refused to do so unless Ogdahl would pay her an additional $1,600, claiming that she had the "prerogative" to change her mind. Mrs. Zubert, on the other hand, testified in her case in chief that such conversations never took place. On cross-examination, however, she testified that she could not recall whether or not they occurred. She claimed that she heard nothing from plaintiffs from mid-September until mid-December, when Rognrud appeared at her office to arrange a date for closing. Mrs. Zubert testified that then, and only then, did she refuse to go through with the agreement.

In this action against Mrs. Zubert and Zubert Construction Company, Ogdahl seeks specific performance and Rognrud seeks recovery of his brokerage commission. After the pretrial hearing, plaintiffs amended their complaint to include claims against Mrs. Zubert for damages resulting from her misrepresenting herself as authorized to sell this property for the company, defendants having raised that defense to the original action. Plaintiffs also filed a separate complaint against Zubert Proper-

ties, Inc., the actual owners of the land under an unrecorded conveyance, seeking specific performance and payment of the brokerage commission.

The case was tried before a jury, but at the close of evidence the trial judge dismissed the jury, ruling that the evidence had not raised any jury questions, and ordered judgment for plaintiffs. By implication the trial court found that Mrs. Zubert had authority to act for Zubert Properties, Inc., and defendants do not challenge that finding on appeal.

They make four basic arguments: (1) That they were entitled as a matter of right to a jury trial on the fact issues in this case; (2) that the June 30 agreement was not in fact a binding contract but was really a mere option which was never properly exercised by Ogdahl and therefore could not be specifically enforced as a contract; (3) that the trial judge erred in finding that there was no abandonment by Ogdahl as a matter of law; and (4) that the agreement cannot be specifically enforced because the identification of the buyer as "Oliver R. Ogdahl or assigns" is too indefinite.

■ Rule 38.01, Rules of Civil Procedure, provides:

"In actions for the recovery of money only, or of specific real or personal property, or for a divorce on the ground of adultery, the issues of fact shall be tried by a jury, unless a jury trial be waived or a reference be ordered."

Defendants argue that an action for specific performance of a contract to convey real property is an action "for the recovery of * * * specific real * * * property" within the meaning of the rule, and that, therefore, they were entitled to a jury trial as a matter of right.

We have often held that the only actions in which Minn. Const. art. 1, § 4,[1] the statutory predecessor of Rule 38.01,[2] and Rule 38.01 itself guarantee the right to a jury trial are those which were conceived of as "legal," so that such a right existed with respect to them, at the time the Minnesota Constitution was adopted. E. g., Indianhead Truck Line, Inc. v. Hvidsten Transport, Inc. 268 Minn. 176, 128 N. W. (2d) 334;

[1] "The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy * * *."

[2] Minn. St. 546.03.

Breimhorst v. Beckman, 227 Minn. 409, 35 N. W. (2d) 719; Morton Brick & Tile Co. v. Sodergren, 130 Minn. 252, 153 N. W. 527; Whallon v. Bancroft, 4 Minn. 70 (109).

The language of Rule 38.01 is merely an attempt to list those actions which were then, and are now, thought of as "legal" as distinguished from "equitable." [3] Thus, the words "actions for the recovery of * * * specific real * * * property" were intended to describe a cause of action to recover specific real property which raises issues which are historically "legal," such as ejectment,[4] rather than a cause of action for specific performance of a contract to convey land, which has long been regarded as entirely equitable.[5] We hold, therefore, that defendants were not entitled to a jury trial of right on any of the fact issues involved in the cause of action for specific performance.[6]

As previously noted, plaintiffs amended their complaint to include a

---

[3] See, Wright, Minnesota Rules, p. 234.

[4] It is clear that there is a historic right to a jury trial in an action for ejectment. City of Osawatomie v. Slayman, 182 Kan. 770, 323 P. (2d) 910; Hagemann v. Pinska, 225 Mo. App. 521, 37 S. W. (2d) 463; Foltz v. Brakhage, 151 Neb. 216, 36 N. W. (2d) 768; Maroney v. Tannehill, 90 Okla. 224, 215 P. 938. Language in a Kansas statute, identical to that in Rule 38.01, Rules of Civil Procedure, has been specifically interpreted as referring only to actions which are in essence actions of ejectment to recover possession of real property. Atkinson v. Crowe, 80 Kan. 161, 102 P. 50.

[5] Spencer v. Robbins, 106 Ind. 580, 5 N. E. 726; Sutherland v. Sutherland, 187 Kan. 599, 358 P. (2d) 776. See, Cram v. Thompson, 87 Minn. 172, 91 N. W. 483.

[6] Sutherland v. Sutherland, *supra*; Mountain View Corp. v. Horne, 74 N. Mex. 540, 395 P. (2d) 676. See, Cram v. Thompson, *supra*; Piper v. Packer, 20 Minn. 245 (274). A similar argument involving the portion of the rule which provides for a jury trial in "actions for the recovery of money only" was made and was rejected by this court in Coughlin v. Farmers & Mechanics Sav. Bank, 199 Minn. 102, 272 N. W. 166. Plaintiff was seeking to recover money and the case thus seemed to be within the literal language of the statute, but this court held that the issues essentially involved, which concerned setting aside and invalidating trusts, were clearly equitable and, therefore, that plaintiff was not entitled to a jury trial as of right. See, Wright, Minnesota Rules, p. 234.

cause of action for damages against defendant Julia Zubert on the ground of misrepresentation. Recovery by plaintiffs on this cause of action, however, was contingent upon Ogdahl's failure to obtain specific performance of the agreement, since an award of both specific performance and the requested damages would amount to a double recovery.[7] Because this additional claim potentially raised issues historically "legal" in character, the trial court quite properly impaneled a jury.[8] At the close of the trial, having determined that plaintiffs were entitled to specific performance, the trial judge correctly dismissed the jury as the "legal" issue of damages was then moot.

■ Defendants argue that, because Ogdahl's obligation to buy was subject to four contingencies, the June 30 agreement was not a binding contract but rather was a mere option, which, if unexercised, cannot be specifically enforced.

The fact that performance by one party is conditional on the occurrence of certain events does not necessarily mean that the agreement is an option and not a contract.[9] However, whether this agreement was a binding contract on June 30, 1964, with performance subject to conditions precedent, or whether it was then an option, the testimony clearly shows that all of the contingencies were satisfied within the specified period as enlarged by the extension executed by Mrs. Zubert on July 29.

Condition 1 was essentially satisfied on August 25 when Rognrud, who on August 3 had obtained a special use permit from the Richfield Village Council, obtained permission from the council for the issuance of a building permit for the apartment building. Ogdahl testified that condition 2 was satisfied when he received a satisfactory oral financing commitment sometime between August 20 and September 1. Ogdahl

---

[7] Cf. Thompson v. Myrick, 24 Minn. 4.

[8] In a case involving both "equitable" and "legal" issues, it is the usual practice to try the "equitable" issues to the court and the "legal" issues to a jury. See, Morton Brick & Tile Co. v. Sodergren, 130 Minn. 252, 153 N. W. 527; Koeper v. Town of Louisville, 109 Minn. 519, 124 N. W. 218; Greenleaf v. Egan, 30 Minn. 316, 15 N. W. 254. Obviously, if the "equitable" issues are dispositive of the case, there is no reason to have the jury pass on the "legal" issues. Cf. Wright, Minnesota Rules, p. 236.

[9] See, 3A Corbin, Contracts, § 761.

also testified that condition 3 had been satisfied by July 5. Thus, since these three conditions were satisfied within the time specified in condition 4 as extended by the July 29 extension, condition 4 was also satisfied.

Whether the contingencies were conditions precedent to performance or conditions to be satisfied so that Ogdahl could exercise an option, they were in fact satisfied and a binding contract resulted which obligated defendant to convey title to the property.

Defendants, however, argue that mere performance of the conditions was not enough to create a binding contract, since Ogdahl never personally told Mrs. Zubert that they had been satisfied. While there is some authority for the proposition that a party who contracts to do an act upon the occurrence of some event is not entitled to notice of the occurrence of the event as a condition precedent to his liability unless he has expressly stipulated for it,[10] the evidence is conclusive that Ogdahl did notify Rognrud, who was exclusively defendants' agent, of the satisfaction of these conditions and of his desire to close. It is the general rule that notice given to an agent is notice to the principal. See, Distillers Distributing Co. v. Young, 261 Minn. 549, 113 N. W. (2d) 175; Jackson v. Mutual Benefit Life Ins. Co. 79 Minn. 43, 81 N. W. 545, 82 N. W. 366.

Restatement, Agency (2d) § 268, provides in part:

"(1) Unless the notifier has notice that the agent has an interest adverse to the principal, a notification given to an agent is notice to the principal if it is given:

"(a) to an agent authorized to receive it;

"(b) to an agent apparently authorized to receive it;

"(c) to an agent authorized to conduct a transaction, with respect to matters connected with it as to which notice is usually given to such an agent, unless the one giving the notification has notice that the agent is not authorized to receive it."

This case clearly fits within § 268(1). Defendants had let Rognrud handle all of the negotiations for this transaction. Ogdahl had never met

---

[10] See, Costantino v. Lodjiodice, 93 Conn. 203, 105 A. 465.

Mrs. Zubert. Rognrud was authorized by the agreement to satisfy all of the conditions himself and did actually obtain the special use and building permits.Therefore, when all the conditions had been fulfilled and Ogdahl was ready to close the transaction, it was not unreasonable for him to communicate with Rognrud, who was undisputedly defendants' agent, rather than with Mrs. Zubert.

In addition, it is clear that Mrs. Zubert either knew, or should have known, that Ogdahl considered the deal to be "on" and thus, inferentially, that the conditions had been performed, since she furnished him with a Torrens certificate number at his request more than a week after the final date for satisfying the conditions had passed.

Accordingly, we hold that it makes no difference whether the agreement in question was an option or a contract with performance subject to conditions precedent when it was entered. Since the conditions were performed, it thereby unquestionably became a binding contract.

■ Defendants challenge the trial judge's finding that there was, as a matter of law, no abandonment of the agreement by Ogdahl, arguing that, because of the dispute over the length of the break in communication between the parties, abandonment was a fact issue.

The trial judge apparently relied heavily on The Melco Investment Co. v. Gapp, 259 Minn. 82, 105 N. W. (2d) 907, in finding that there was no abandonment. That case, however, stands only for the proposition that, considering all of the facts and circumstances involved in that case, a 4-month break in communications between the parties did not constitute an abandonment as a matter of law. It does not hold, as the trial judge intimates, that a 4-month delay, as a matter of law, can never constitute an abandonment. Thus, the mere fact that the gap in communications in this case was less than 4 months, standing alone, could not support a finding of no abandonment as a matter of law.

A finding of abandonment depends upon the intentions of the parties and can be made in any case only after a careful consideration of *all* of the facts and circumstances involved. The Melco Investment Co. v. Gapp, *supra.* In this case, Rognrud testified that during the fall of 1964 he continually attempted to persuade Mrs. Zubert to close, but that she refused. While Mrs. Zubert in her case in chief denied that any such con-

versations took place, she stated on cross-examination merely that she could not recall them. It is, however, clear that Mrs. Zubert knew of plaintiffs' continued intention to go through with the transaction as late as the second week in September, when she supplied Ogdahl with the Torrens certificate number. Thus, even if we view the evidence in the light most favorable to defendants, the break in communications was at most 2¾ months. Since the agreement involved in this case did not become enforceable for at least 2 months after it was entered, a delay of this length need not be viewed as unusual. Absent any other evidence of an intent by Ogdahl to abandon this agreement, and given all of the other facts and circumstances of this case, we are of the opinion that the evidence of a 2¾-month delay would not support a finding of an abandonment of the contract. Thus, although the trial judge may have misread The Melco Investment Co. case, his finding that there had been no abandonment as a matter of law is correct.

■ Finally, defendants argue that "Oliver R. Ogdahl or assigns" is such an indefinite description of the purchaser that the contract is unenforceable, since defendants would not have known whom to sue if the purchaser had breached. This type of phrase, as the testimony establishes, is commonly employed to describe the purchaser in land sale contracts when flexibility is needed. It is clear that a cause of action would have arisen against Ogdahl in case of his breach despite any assignment he might have made. Since Ogdahl has tendered payment of the agreed-upon purchase price — which is all that defendants have in fact bargained for — ,[11] to hold this phrase too indefinite would endanger the enforceability of existing real estate contracts without serving any useful purpose. In addition, this agreement was drawn by defendants' agent at Mrs. Zubert's request and was first presented to Ogdahl by defendants as an offer to sell. It would be grossly inequitable if defendants could avoid performance of their agreement because of the words their agent chose to describe the purchaser.

Upon a consideration of all of defendants' arguments, we are compelled to affirm.

Affirmed.

----

[11] See, Johnson v. Eklund, 72 Minn. 195, 75 N. W. 14.