DISTILLERS DISTRIBUTING COMPANY AND ANOTHER
v. FRANCIS E. YOUNG, INDIVIDUALLY AND d.b.a.
POLAR BAR & CAFE.

113 N. W. (2d) 175.

January 26, 1962—Nos. 38,390, 38,391.

*Scott, Burke & Scott,* for appellant.

*Maslon, Kaplan, Edelman, Joseph & Borman* and *Ronald J. Wolf,* for respondents.

FRANK T. GALLAGHER, JUSTICE.

Defendant appeals from two judgments of the municipal court of St. Paul obtained against him in two related cases, one brought by Distillers Distributing Company and one by Ed. Phillips & Sons Company.

Defendant, Francis E. Young, was the owner of a liquor establishment known as the Polar Bar and the holder of an "On-Sale" liquor license issued by the village of North St. Paul, Minnesota. On March 30, 1959, he sold the liquor establishment to one Bernard A. McNaughton on conditional sales contract but retained title to the liquor license as security.

Plaintiff in the first case, Distillers Distributing Company, a wholesale liquor distributor, had done business with defendant on a credit basis earlier in 1959, prior to the sale to McNaughton. It continued to extend credit to the Polar Bar after the sale to McNaughton, still carrying the account on its books as "Francis E. Young doing business as the Polar Bar." On November 18, 1959, Distillers received an order from the Polar Bar through its salesman, Michael Rocco, in the amount of $322.84. The order was filled the next day under an invoice made out in defendant's name.

McNaughton subsequently failed to fulfill his contract to purchase the Polar Bar from defendant who served notice of cancellation on him on December 15, 1959. Defendant also sent a letter to Distillers that same day stating that he would "refuse any liability of any purchases [by McNaughton] from this date forward."

The uncontradicted testimony was that, shortly after his sale to McNaughton and long before the liquor sales in question were made, defendant introduced McNaughton to the salesmen for the various liquor wholesalers, including Rocco. Defendant testified that when the salesmen were introduced to McNaughton they were informed that the latter "was buying the place on a contract and that he would be making all the purchases and would be responsible for the payments." However, an executive of Distillers testified that the company was never informed by any of its salesmen of anything they were told by defendant that would alter the status of the latter's account.

When McNaughton failed to pay for the liquor received November 19, 1959, Distillers brought suit against defendant for the amount of the sale. The case was tried to the court, which found that plaintiff had sold and delivered $322.84 worth of liquors to defendant, who had failed and refused to pay, and ordered judgment for plaintiff. Defendant moved the court to amend its findings of fact so as to find that the sale had been made to McNaughton rather than to defendant and that plaintiff through its agents had actual knowledge of the contract of sale between defendant and McNaughton. The court denied the motion, whereupon defendant appealed to this court from the judgment.

In the second case, Ed. Phillips & Sons Company, also a wholesale distributor, sued Young for $680.14 for liquor sold to the Polar Bar on October 29, November 13, and November 19, 1959. The orders had been placed through Phillips' agent, John Pechulanos. Defendant testified that he had introduced Pechulanos to McNaughton and told him that the latter "was going to be responsible from here on in." The Phillips credit manager testified that his organization had received no information of the sale of the bar by defendant to McNaughton. Defendant did send a written notice on December 15, 1959, identical to the one sent to Distillers. The trial court found for Phillips and

denied defendant's motion for substituted findings similar to those requested in the Distillers case. Defendant thereupon appealed from the judgment against him, which appeal involves the same issues as the Distillers case.

Defendant assigns as error that the judgments against him are contrary to law, citing P. Ballantine & Sons v. Gulka, 117 N. J. L. 84, 186 A. 722, as controlling.

Plaintiffs, on the other hand, seek to uphold the determination of the trial court on the following grounds: (1) That defendant did not formally notify plaintiffs of the sale to McNaughton until after the liquor sales in question and therefore the liquor sales were made to defendant and on his credit; (2) that the holder of a liquor license issued under Minn. St. 340.11 is liable for purchases made under the authority of that license; (3) that defendant's letter of December 15, 1959, is an acknowledgment that he is liable for purchases made by McNaughton prior to that date; and (4) that defendant's assignment of error is legally insufficient.

■ Plaintiffs argue that defendant failed to give them notice of the sale of his business to McNaughton. We cannot agree with that argument under the facts and circumstances here. When defendant gave notification to the salesmen for plaintiffs, that information was imputed to the plaintiffs. As stated in Restatement, Agency (2 ed.) § 268:

"* * * [A] notification given to an agent is notice to the principal if it is given:

"(a)    to an agent authorized to receive it; [or]

"(b)    to an agent apparently authorized to receive it."[1]

Here, the salesmen were authorized to accept orders for liquor and to collect payment for those orders later; they were the usual vehicle

---

[1] The information given to the salesmen would be "notification" under Restatement, Agency (2 ed.) § 9 (2) (a). Even if the salesmen had *informally* learned of the sale to McNaughton, this knowledge would be imputed to plaintiffs if within the scope of the salesmen's authority. Restatement, Agency (2 ed.) §§ 272, 275, 381. See, Trentor v. Pothen, 46 Minn. 298, 49 N. W. 129. And see, Annotation, 43 A. L. R. 745.

of contact between plaintiffs and defendant. It seems obvious that the salesmen had apparent authority, if not actual authority, to accept notification of the sale of defendant's establishment to McNaughton. Restatement, Agency (2 ed.) § 27. It therefore follows that defendant was not required to send written notice to the company itself in order to escape liability for future sales made to McNaughton. The notice given to the salesmen is chargeable to plaintiffs, and plaintiffs cannot claim that they thought they were making later contracts for the sale of liquor with defendant rather than with McNaughton. The knowledge that defendant was no longer responsible for liquor purchases of the Polar Bar is imputed to the plaintiffs, and in point of law, the contracts for the sale of the liquor were made with McNaughton.

■ Under contract law and the Uniform Sales Act, liability for the price of goods lies with the purchaser. Minn. St. 512.63(1). Plaintiffs argue that § 340.11 should be interpreted to shift this liability to the liquor licensee (defendant here) for purchases made by a third person (McNaughton) under authority of the liquor license of defendant. Subd. 1 of that statute reads in part:

"It shall be unlawful for any person, directly or indirectly, upon any pretense or by any device, to manufacture, import, sell, exchange, barter, dispose of, or keep for sale any intoxicating liquor without first having obtained a license therefor, as herein provided."

McNaughton had been issued a "buyer's card" by the state liquor commissioner which authorized him to purchase liquor under defendant's license, but plaintiffs argue that this must be construed to authorize purchases only as the agent and for the account of the actual licensee. Any other interpretation, plaintiffs claim, would authorize a violation of § 340.11, since McNaughton would be buying liquor to sell without his own license.

A similar contention has been passed on by the Supreme Court of New Jersey in P. Ballantine & Sons v. Gulka, 117 N. J. L. 84, 186 A. 722. The court framed the issue as follows:

"The question for decision is whether the vendor of a retail liquor business, holding a license under chapter 436 * * * is liable for the price of malt liquors sold by a wholesale liquor dealer to the vendee

during his period of ownership and management, for resale in the continued conduct of the retail business, where the vendee was not licensed, but conducted the business 'under the license issued to' the vendor."

The court decided that the vendor-licensee is not liable. It stated that the statute forbidding sale of liquor without a license (117 N. J. L. 86, 186 A. 723) "does not exhibit a purpose to impose upon the vendor, in such circumstances, an obligation contractual in nature, nor to lay a penalty in this form against him, to make the licensing provisions effective. It does not create an obligation and provide for its enforcement by remedy as for breach of contract."

The licensing statute was designed to protect the public morals and add to the public revenue. Minter Bros. Co. v. Hochman, 231 Minn. 156, 42 N. W. (2d) 562. It was not designed to assist creditors of the purchasers of liquor supplies in their collection processes. Whatever the criminal liability of McNaughton for selling liquor on his own account without a license may be, it is clear that the "buyer's card" issued by the state authorized him to purchase liquor supplies. We are not convinced that the card was intended to extend the protection of the defendant-licensee's credit to transactions between the liquor dealers and the card holder, nor that the statute was intended to shift liability from the contract debtor to the liquor licensee.

■ Plaintiffs claim that defendant's letter of December 15, 1959, is an admission of liability for the prior liquor sales. The letter does not admit liability, but merely states that defendant would "refuse any liability of any purchases from this date forward." Even if this were unmistakably an admission, such statements cannot affect contracts made at a prior date, as they were here, for no reliance on them can be shown. An admission of this sort cannot create liability where in point of law there would otherwise be none. Binewicz v. Haglin, 103 Minn. 297, 115 N. W. 271, 15 L. R. A. (N. S.) 1096; cf. 4 Wigmore, Evidence (3 ed.) § 1057. In view of the uncontradicted evidence of the notice given to the salemen for plaintiffs, it is clear that the contracts for the sale of the liquor were in fact made with McNaughton. The fact that the defendant may have thought he could

be held liable for the purchases does not operate to make him so liable.

■ Plaintiffs also assert a technical claim under Supreme Court Rule VIII(3) (e), (222 Minn. xxxiv), which reads as follows:

"Errors assigned shall be separately and concisely stated and numbered, without repetition, and where a finding of fact is attacked as not sustained by the evidence, it shall be particularly specified."

In this case defendant failed to note that he was attacking the findings of fact as not sustained by the evidence in each case, merely stating instead: "The judgment against appellant, Francis E. Young, is contrary to law."

Plaintiffs cite In re Settlement of Underwood, 231 Minn. 144, 42 N. W. (2d) 416, and In re Delinquent Real Estate Taxes, Roseau County, 212 Minn. 562, 4 N. W. (2d) 783, as controlling on the proposition that defendant's assignment of error here raises no proper issue for this court. See, also, the cases collected in 1 Dunnell, Dig. (3 ed.) § 361. However, it should be noted that in In re Delinquent Real Estate Taxes, Roseau County, *supra,* this court, while stating the general rule, nonetheless decided the case on the merits. This court has often, in its discretion, waived compliance with Rule VIII in the interests of justice. 1 Dunnell, Dig. (3 ed.) § 358, note 43. This should especially be done where, as here, the briefs make it clear that only one finding of the trial judge is being attacked. Taney v. Hodson, 170 Minn. 230, 212 N. W. 196. In one case where appellant had raised his objection in a motion in the trial court for amended findings but had not specified it in his assignments of error, this court waived the insufficient assignment, considered the question, and reversed the judgment of the trial court. Finley v. Erickson, 122 Minn. 235, 142 N. W. 198.

Here, also, defendant's objection to the court's rulings below was clearly raised in the motions for amended findings. In each case it involves but one alleged error, the trial judge's apparent theory that the sales were in fact made to the liquor licensee until he had given formal notification to the wholesalers. We are of the opinion that in the interest of justice we should waive the technical failure of defendant

here; and since the trial court ruled erroneously, the judgment must be reversed.

Reversed.