# MEGARRY BROTHERS, INC. v. STATE.

188 N. W. (2d) 919.

July 16, 1971—No. 42593.

*Thomas, King, Swenson & Collatz* and *George C. King,* for appellant.

*Warren Spannaus,* Attorney General, *Eric B. Schultz,* Deputy Attorney General, and *John R. Murphy,* Special Assistant Attorney General, for respondent.

Heard before Knutson, C. J., and Murphy, Otis, Rogosheske, and Rolloff, JJ.

ROGOSHESKE, JUSTICE.

Plaintiff appeals from an order denying its post-trial motion for a new trial in an action arising out of a highway construction contract. The dispositive issue is whether the evidence supports the trial court's findings, which in essence amount to a determination that the plaintiff contractor and its agents did not reasonably rely on representations made by an inspector

who was acting for defendant at the job site. We think the evidence does support the court's findings and thus affirm.

Plaintiff entered into a highway construction contract with defendant, by the State Highway Department, for the asphalt paving of a portion of Interstate Highway No. 94 near Melrose, Minnesota. On June 30, 1967, plaintiff began laying the wearing course of blacktop, which was to be composed of specified proportions of rock, gravel, sand, mineral filler, and oil. That afternoon, it was determined by a "spot check" that the plaintiff's continuous-flow mixing plant was erroneously calibrated so as to cause it to produce a mix containing 7 percent oil instead of the 5.2 percent specified in the construction contract. The plant was shut down to make this particular spot check, and after the error was ascertained, it remained closed down for the day.

A defective mixture was first suspected by one of plaintiff's employees at the job site early in the morning of June 30 when the materials for the wearing coat were first delivered upon the roadway. He reported that the mixture appeared to contain too much oil. The plant, however, was not shut down at that time because the state inspector, assigned by the Department of Highways to ensure proper performance of the contract terms, assured plaintiff's employees that he had made a "spot check" and had found the percentage of oil in the mix to be proper if not slightly low. The inspector gave the same reply in similar conversations with plaintiff's employees two more times before noon.

Under the terms of the construction contract, where defective material is supplied to and rejected by the state, the contractor is required to remove and replace it at his own expense. Accordingly, plaintiff was required to remove and replace the wearing course of blacktop which was laid on June 30, thus incurring expenses found by the trial court to amount to $25,996.97.

This action was brought to recover the cost of performing this extra work upon the claim, as we understand, that the plain-

tiff's employees had a right to, and did, rely upon the inspector's assurances that the mixture conformed to the contract specifications. Plaintiff allegedly assumed that the state inspector was following the Bituminous Plant Inspector's Manual in making spot checks of the mixture. The method directed in that manual is "sticking the tank," i.e., measuring the quantity of oil in the tank by stick before and after a number of truckloads of the mix have been produced and dividing the weight of the oil by the total weight of loads included in the spot check. It is undisputed that this is the only type of check which will disclose whether the machinery is properly set so that the oil flowing into the mix is in accordance with specifications. The inspector, however, had made "theoretical" spot checks, which revealed only whether the amount of oil in the mix conformed to the machine setting and could not reveal that the setting itself was incorrect. Plaintiff therefore asserts that the state must bear the expense of removal and replacement incurred as a result of plaintiff's justifiable reliance on the representations of the state's agent.

In contrast to plaintiff's contentions, the trial court's findings include a determination that plaintiff's employees "knew that the state inspector was not measuring the amount of oil consumed at the mix plant and knew that the inspector in making the 'spot checks' was using only the 'theoretical' method of measuring the amount of oil consumed." The findings also incorporated pertinent parts of the state's Standard Specifications for Highway Construction, which were part of the construction contract:

"The Engineer is authorized to inspect all work performed and materials furnished. * * * Such inspection, however, shall not relieve the Contractor from any obligation to perform all of the work strictly in accordance with the requirements of the Contract.

"* * * No advice which the Inspector may give the Contractor shall be construed as binding upon the State nor will such

advice release the Contractor from the fulfillment of the terms of the Contract."

On the basis of these critical findings, the court concluded that plaintiff had no legal right to rely on the advice of the state inspector and that plaintiff's own error, not its reliance upon the inspector's erroneous representations, was responsible for the extra work required under the contract. Because the evidence as summarized below supports the trial court's determination, we are compelled to affirm.

The findings that plaintiff's employees knew that the state's inspector was making only theoretical spot checks is substantiated by testimony concerning the procedure for "sticking" the tank required by the inspector's manual. The evidence shows that a spot check by sticking the tank requires the plant to be shut down for about 15 minutes and customarily requires that the contractor's employees climb to the top of the tank, measure the oil level by the stick, and report the measurements to the inspector, who makes the necessary calculations to determine the percentage of oil in the mix. Notwithstanding testimony that shutting down the plant for a few moments is not unusual, it is significant that the evidence clearly shows that the plaintiff's personnel normally stick the tank. Thus, they must have known that sticking the tank had not been done, which knowledge is imputed to the plaintiff. Distillers Distributing Co. v. Young, 261 Minn. 549, 113 N. W. (2d) 175; Rognrud v. Zubert, 282 Minn. 430, 165 N. W. (2d) 244. The finding that plaintiff's employees knew the state inspector was using only the theoretical method of measuring the amount of oil consumed is also substantiated by the evidence, necessitating the conclusion implicit in the trial court's decision that plaintiff did not in fact rely on representations made by the state inspector. This alone is sufficient to defeat plaintiff's recovery.

We think the evidence also establishes that any reliance on the inspector's representation was unjustified. Not only did the contract contain exculpatory clauses quoted above, but it is clear

that the plaintiff, not the state, was in control of producing a mixture which would conform to contract specifications. The fact that such production is subject to inspection and approval of the state does not relieve plaintiff from taking all steps necessary to fulfill its obligation under the contract. The inspector's responsibility is to ensure that the materials used conform to the specifications; he is not on the job site to supervise or control the contractor's work in the sense apparently claimed by plaintiff. There is nothing in the evidence which would indicate that the inspector's assurances that the mix was acceptable in any way prevented or restricted the contractor from closing down the plant when its personnel suspected defective materials. Thus, even if plaintiff did rely on the state inspector's assurances after having received notice that the mixture was very likely defective, such reliance cannot be legally justified.

Plaintiff cites numerous cases in support of the argument that the exculpatory clauses referred to above should not be enforced by this court. The instant case is not analogous to those cited, inasmuch as the latter deal with misrepresentations as to soil and subsurface conditions which induced bidding by contractors. The contractor here did not rely on defective plans and specifications or any positive and material representation of a condition solely within the knowledge of the state. Hollerbach v. United States, 233 U. S. 165, 34 S. Ct. 553, 58 L. ed. 898; Christie v. United States, 237 U. S. 234, 35 S. Ct. 565, 59 L. ed. 933; United States v. Atlantic Dredging Co. 253 U. S. 1, 40 S. Ct. 423, 64 L. ed. 735; Arcole Midwest Corp. v. United States (Ct. Cl.) 113 F. Supp. 278; McCree & Co. v. State, 253 Minn. 295, 91 N. W. (2d) 713; Friederick v. County of Redwood, 153 Minn. 450, 190 N. W. 801; Ridley Investment Co. v. Croll (Del.) 192 A. (2d) 925; Hersey Gravel Co. v. State Highway Dept. 305 Mich. 333, 9 N. W. (2d) 567; Depot Const. Corp. v. State, 41 Misc. (2d) 764, 246 N. Y. S. (2d) 527. Neither could the inspector's role or representations in this case be construed in such a way as to justify recovery by the plaintiff on the grounds of

fraud or breach of contractual warranty by the state. Passaic Valley Sewerage Commrs. v. Holbrook, Cabot & Rollins Corp. (3 Cir.) 6 F. (2d) 721; Morrison-Knudsen Co. Inc. v. United States (Ct. Cl.) 345 F. (2d) 535; Ganley Brothers, Inc. v. Butler Brothers Bldg. Co. 170 Minn. 373, 212 N. W. 602; Litchfield Const. Co. v. City of New York, 244 N. Y. 251, 155 N. E. 116. Unlike the cases cited by plaintiff, the evidence here discloses that the inspector's representations related to a material fact equally susceptible of discovery by the state and the contractor. Under the terms of the contract, plaintiff had the primary obligation to fulfill its terms and, at its expense, discover and correct any errors during the course of production, including the removal and replacement of defective materials.

Affirmed.