**Cleo DVORACEK, Respondent,**

v.

**Stephen GILLIES, Appellant.**

No. C2-84-1174.

Court of Appeals of Minnesota.

Feb. 19, 1985.

Lawrence P. Marofsky, Minneapolis, for respondent.

Thomas R. Haugrud, St. Paul, for appellant.

Heard, considered and decided by LANSING, P.J., and FORSBERG and LESLIE, JJ.

## OPINION

LANSING, Judge.

The tenant in this unlawful detainer action appeals from a judgment determining that the landlord is entitled to restitution of the premises because the lease term had expired. The trial court directed a verdict for the landlord at the close of evidence, finding as a matter of law that the tenant had given inadequate notice to renew the lease. We affirm in part, reverse in part, and remand.

## FACTS

Stephen Gillies rented commercial space from Cleo Dvoracek at 3014 South Lyndale Avenue. Gillies does business as Gemini Service Center, an automobile and marine repair service. Dvoracek owns the adjoining premises and business, called Art Materials, Inc., at 3018 South Lyndale Avenue. She works there full-time and employs about 18 people.

The parties executed a lease that provided for a one-year term expiring May 31, 1984, with an option to renew for a two-year period and a right of first refusal for an additional two-year period. Paragraph 2.2 of the lease required the tenant to give the landlord a written renewal notice at least 60 days before the lease expired. In addition, paragraph 25 provided:

> Any notice required under this Lease shall be in writing, and shall be deemed to have been given if deposited in the United States mail, postage prepaid, certified or registered mail, return receipt requested, and addressed as follows:
>
> Landlord:   Cleo Dvoracek
> 3018 Lyndale Avenue South
> Minneapolis, MN 55408
>
> Tenant:   Stephen Gillies
> 2645 Lyndale Avenue South
> Minneapolis, MN 55408

Gillies testified that he hand-delivered all his rent checks to Dvoracek at Art Materials because it was right next door. If Dvoracek was not available, he left the checks with employees at the city desk there. Dvoracek admitted that Gillies had left rent checks with employees at the city desk in the past and that she had hand-delivered notices to him in the past.

Gillies testified that on the morning of March 16, 1984, he dictated a letter giving notice of his intent to renew the lease for two years. His secretary typed and notarized the letter at Gillies' office in his home at 2645 South Lyndale. They drove together to the common driveway between Art Materials and the Gemini Service Center. Gillies went into a nearby store to copy the letter, while his secretary waited in the car. When he returned he handed the copy to his secretary, put the original into an envelope, and went into Art Materials sometime around noon. He said he asked for Dvoracek and was told she was not available. He left the letter with an employee at the city desk and said, "Please see that Cleo gets this." He said the employee responded, "I certainly will," but he doesn't remember if the employee was a man or woman. The secretary, who had worked for Gillies for 15 years, testified to the same sequence of events.

Dvoracek and her employees who testified denied receiving the letter, although some employees who had worked that day did not testify. According to the employ-

ees' testimony, anyone working in the store that day could have attended the city desk over the lunch hour.

Dvoracek received a letter from Gillies on about May 1 asking her to repair the air conditioning before the summer. She responded with a letter from her attorney dated May 14, advising Gillies that she had received no notice of his intent to renew the lease and that the lease was to terminate on May 31. Gillies attempted to pay the June rent, but Dvoracek refused to accept it.

This unlawful detainer action was brought in June 1984. The trial court directed a verdict for the landlord at the close of evidence on the ground that, even assuming Gillies delivered the notice as he had testified, Dvoracek's employees were not her agents for purposes of receiving the renewal notice.

Gillies then argued that by virtue of paragraph 2.4 of the lease he became a month-to-month tenant and was therefore entitled to 30 days' notice. Paragraph 2.4 reads:

> If Tenant shall hold over in the premises upon the expiration of the term of this Lease Agreement [or] any extension thereof, the term shall become month-to-month and all other terms and conditions of this Lease Agreement shall remain in full force and effect.

The trial court ruled that Gillies became a tenant at sufferance because Dvoracek had refused the June rent and thereby had not consented to the holding over, so that no further notice was required to terminate the tenancy. The writ of restitution was stayed pending this appeal.

### ISSUES

1. Did the trial court err in directing a verdict on the ground that the landlord's employees were not her agents for the purpose of receiving the tenant's renewal notice?

2. Did the trial court err in ruling that no notice was required to terminate the tenancy because Gillies was a tenant at sufferance?

### ANALYSIS

#### I

In reviewing the trial court's grant of a directed verdict this court must consider whether, viewing the record as a whole in the light most favorable to the nonmoving party, "different persons could reasonably come to different conclusions." *Wohlfeil v. Murray Machinery, Inc.*, 344 N.W.2d 869, 872 (Minn.Ct.App.1984) (quoting *Lakeland Constructors, Inc. v. Roger Sheehy Co.*, 304 Minn. 175, 178, 229 N.W.2d 514, 515–16 (1975)).

Gillies argues that the landlord's employees had either actual or apparent authority to accept the renewal notice and that the evidence presented at minimum a question for the jury. A notification given to an agent is notice to the principal if it is given to "an agent authorized to receive it" or to "an agent apparently authorized to receive it." *Distillers Distributing Co. v. Young*, 261 Minn. 549, 552, 113 N.W.2d 175, 177 (1962) (quoting Restatement (Second) of Agency § 268 (1957)). The existence of an agency relationship is a fact question for the jury. *White v. Boucher*, 322 N.W.2d 560, 566 (Minn.1982).

The trial court relied on *Prendergast v. Searle*, 81 Minn. 291, 84 N.W. 107 (1900), in directing a verdict for the landlord. In *Prendergast* the court held that evidence should have been admitted tending to show that the tenant had mailed a notice to an agent of the landlord, because the agent had "the charge and management of his principal's business with reference to such tenancy." *Id.* at 294, 84 N.W.2d at 109.

The trial court determined that, even assuming Gillies delivered the letter to an Art Materials employee, the notice was inadequate because Dvoracek's employees were not agents "having the charge and management" of her rental property business. In *Prendergast* the agent did have the charge and management of the principal's rental business, but the case does not establish a rule of law that such agents are

the only ones who may receive notices. Agency is a fact question. The question here is whether Dvoracek's employees became her agents for the purpose of receiving Gillies' renewal notice.

The record shows that Gillies always hand-delivered his rent checks to either Dvoracek or her employees at Art Materials. Although Dvoracek testified that she had not expressly authorized her employees to accept hand-delivered correspondence from Gillies, she allowed the practice to continue. She never told Gillies not to leave correspondence at the city desk, and she never told the employees at the city desk not to accept deliveries for her. Furthermore, mail sent to Dvoracek at 3018 South Lyndale is delivered to the city desk.

■ Viewing the evidence in the light most favorable to Gillies, a jury could reasonably have concluded that Dvoracek had either impliedly authorized her employees to accept the notice or had consented to Gillies' practice of hand-delivering correspondence to them, so that he was justified in relying on them as her agents. We reverse and remand for another trial on this issue.

## II

Gillies contends that even if the lease had expired, he must be given 30 days' notice to quit the premises because he became a month-to-month tenant under paragraph 2.4 of the lease. This issue may arise on remand if the jury finds no agency relationship between Dvoracek and her employees for purposes of accepting the renewal notice or finds that the notice was not delivered.

■ A tenant who wrongfully holds over after expiration of a lease becomes a tenant at sufferance. *See, e.g., Thompson v. Baxter*, 107 Minn. 122, 125, 119 N.W. 797, 798 (1909); *Engels v. Mitchell*, 30 Minn. 122, 124, 14 N.W. 510, 511 (1883). Dvoracek notified Gillies by the May 14 letter that he was to be out of the building by May 31, and she refused to accept his June rent payment. If the lease expired

because he failed to renew it, Gillies wrongfully held over. Therefore, he became a tenant at sufferance, and the trial court correctly ruled that no further notice was required to terminate the tenancy.

## DECISION
Affirmed in part, reversed in part, and remanded.