In the Matter of the ESTATE OF Elisabeth M. CONGDON, a. k. a. Elisabeth Mannering Congdon, Deceased.

Marjorie CALDWELL, Appellant,

v.

Suzanne LeROY, Heather LeROY, Rebecca LeRoy Williams, Children of Marjorie Caldwell, Respondents.

In the Matter of the ESTATE OF Elisabeth M. CONGDON, a. k. a. Elisabeth Mannering Congdon, Decedent.

In the Matter of the Living Trust of Elisabeth M. CONGDON Created by Agreement of September 18, 1974, as amended by Agreements dated July 11, 1975 and December 29, 1976.

In the Matter of the Trust Created under the Last Will and Testament of Chester Adgate CONGDON, a. k. a. Chester A. Congdon, decedent.

In the Matter of the Trust Created by Indenture of August 3, 1916, between Chester A. CONGDON, and others, known as the Congdon Trust.

Nos. 51335, 51721 and 51883.

Supreme Court of Minnesota.

Aug. 7, 1981.

Rehearing Denied Sept. 22, 1981.

Meshbesher, Singer & Spence, Ronald I. Meshbesher and Carol Grant, Minneapolis, Frank R. Berman, Beverly Hills, Cal., for Caldwell.

Johnson, Fredin, Killen, Thibodeau & Seiler and Joseph B. Johnson, of Hanft, Fride, O'Brien & Harries, P. A. and Tyrone P. Bujald, Duluth, for trustees.

Henson & Efron, P. A. and Alan C. Eidsness, Stephanie Willbanks and Richard B. Solum, of Delaney, Thompson & Solum, Minneapolis, for Andrew LeRoy.

Earl B. A. Isenee, Edina, for Audrey LeRoy.

Hanft, Fride, O'Brien & Harries and Tyrone Bujold, Duluth, for Jennifer C. Johnson.

Delaney, Thompson & Solum, Minneapolis, for LeRoy, et al.

SCOTT, Justice.

This is a consolidated appeal of three causes of action arising from the death of Elisabeth M. Congdon (Ms. Congdon), who was murdered on June 27, 1977. Jennifer Johnson, one of Ms. Congdon's two daughters, filed a petition with the St. Louis County Court, Probate Division, seeking to admit to probate Ms. Congdon's last will and testament dated December 29, 1976, and a two-page document disposing of specific items of personal property.[1] Marjorie Congdon LeRoy Caldwell, Ms. Congdon's other daughter, objected to the petition for probate. She alleged that Ms. Congdon lacked testamentary capacity, that the will was procured by undue influence, and that the will had not been properly executed.

After a trial before the St. Louis County Court, Probate Division, the will and accompanying memorandum were admitted to probate.

On April 14, 1980, the St. Louis County District Court, Appellate Division, affirmed the probate court's order. Mrs. Caldwell appeals that decision to this court.[2]

On July 7, 1977, Roger Caldwell, appellant's husband, was arrested and charged with Ms. Congdon's murder. Approximately two months later four of Mrs. Caldwell's seven children[3] filed a petition in the St. Louis County Probate Court objecting to the distribution of funds to Mrs. Caldwell. The petition alleged a continuing murder investigation into the possible involvement of appellant and sought to prevent her from receiving distributions from the following sources:

1. The estate of Ms. Congdon (estate).

2. The living trust of Ms. Congdon created by agreement of September 18, 1974, and amended on July 11, 1975, and December 29, 1976 (the "living trust").

3. The trust created under the last will and testament of Chester A. Congdon (the "testamentary trust").

4. The trust created by indenture of August 3, 1916, by Chester A. Congdon (the "Congdon trust").

Appellant petitioned for distribution of her share of the trust funds on September 5, 1977. In response to that petition the trustees of the various trusts petitioned for an order restraining distribution to appellant pending a determination of her involvement in the murder. After a brief hearing, the judicial officer took the petitions under advisement.

Roger Caldwell was convicted of murdering Ms. Congdon on July 8, 1978. Three days later appellant was charged with conspiracy and murder, and was later indicted on those charges. On July 27, 1978, the judicial officer restrained distributions to appellant for up to one year pending a determination of her involvement in Ms. Congdon's death.[4]

Appellant was found not guilty in the murder of Ms. Congdon on July 20, 1979.

---

1. Minn.Stat. § 524.2–513 (1980) allows items of personal property to be disposed of by a separate written memorandum.

2. This court granted discretionary review pursuant to Minn.R.Civ.App.P. 105.01.

3. The children joining in the September 2, 1977, petition were Peter T. LeRoy, Suzanne C. LeRoy, Rebecca W. LeRoy and Heather M. LeRoy.

4. Notwithstanding the restraining order, the judicial officer authorized the trustees of the "living trust" to distribute a total of $1,500 per month to appellant and her son Richard W. LeRoy, and a total of $1,000 per month for the benefit of appellant's other children.

Three days later, the St. Louis County Probate Court terminated the prohibition against distributions to appellant by its order dated July 23, 1979. However, the order provided that a restraining order could be reapplied for if a proceeding were commenced pursuant to Minn.Stat. § 524–2.803 (1980).[5] On July 25, 1979, the trustees petitioned for such a restraining order, which was granted on July 26, 1979. In response, appellant filed a motion to require the trustees to immediately distribute to her all moneys to which she was entitled, and demanded a change of venue in the event of a Minn.Stat. § 524.2–803 (1980) action. An objection to her motion was filed on August 22, 1979, by three of appellant's children. At that time the children also requested a trial to determine appellant's entitlement to distributions. The St. Louis County Probate Court denied the demand for change of venue on October 16, 1979. Mrs. Caldwell appealed that order to the St. Louis County District Court, Appellate Division.

On December 4, 1979, the county probate court denied appellant's motion for an immediate distribution and once again denied the change of venue. The court concluded that:

> A finding in a criminal proceeding that a person is not guilty of participating in the felonious and intentional killing of another does not prohibit a civil proceeding in this court to determine by a preponderance of the evidence whether the killing was felonious and intentional so as to prevent the person from receiving benefits by reason of the death.

Mrs. Caldwell appealed this order to the St. Louis County District Court, Appellate Division.

On October 10, 1980, the Appellate Division of the St. Louis County District Court issued separate orders affirming the October 16, 1979, and the December 4, 1979, orders. We granted appellant's petition for permission to appeal the October 10, 1980, decisions.

On August 9, 1979, appellant initiated a declaratory judgment action in Hennepin County District Court. She sought a declaration that Colorado law was determinative of her status as a beneficiary or, in the alternative, that Minn.Stat. § 524.2–803 (1980) was unconstitutional. The parties made cross-motions for summary judgment, and respondents moved to dismiss the action. The motion to dismiss was granted pursuant to Minn.Stat. § 555.06 (1980).[6] On August 15, 1980, Mrs. Caldwell appealed the Hennepin County District Court's dismissal of the declaratory judgment action to this court.

There are four basic issues in this appeal:

First, whether the St. Louis County Court, Probate Division, had proper venue and jurisdiction. Second, whether the St. Louis County Probate Division erred by admitting into probate Ms. Congdon's December 29, 1976, will. Third, whether, pursuant to Minn.Stat. § 524.2–803 (1980), there should be a civil proceeding to determine appellant's right to receive from Ms. Congdon's will and various trusts. Finally, whether the statute of limitations prevents respondents from proceeding pursuant to Minn.Stat. § 524.2–803 (1980).

---

5. Minn.Stat. § 524.2–803 (1980) provides in part:

(a) A surviving spouse, heir or devisee who feloniously and intentionally kills the decedent is not entitled to any benefits under the will or under this article, and the estate of decedent passes as if the killer had predeceased the decedent. Property appointed by the will of the decedent to or for the benefit of the killer passes as if the killer had predeceased the decedent.

* * * * * *

(d) Any other acquisition of property or interest by the killer shall be treated in accordance with the principles of this section.

(e) A final judgment of conviction of felonious and intentional killing is conclusive for purposes of this section. In the absence of a conviction of felonious and intentional killing the court may determine by a preponderance of evidence whether the killing was felonious and intentional for purposes of this section.

6. Minn.Stat. § 555.06 (1980) provides as follows:

The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding.

1. In resolving these issues, we must first determine venue and jurisdiction. Minn.Stat. § 542.01 (1980) provides the general rule as to venue:

Except as provided in section 542.02, every civil action shall be tried in the county in which it was begun, unless the place of trial be changed as hereinafter prescribed; and when so changed all subsequent papers in the action shall be entitled and filed in the county to which such transfer has been made.

Minn.Stat. § 524.3–201 (1980) provides the general rule for the venue of probate estate proceedings:

(a) Venue for the first informal or formal testacy or appointment proceedings after a decedent's death is:

(1) in the county where the decedent had his domicile at the time of his death * * *.

\*     \*     \*     \*     \*     \*

(b) Venue for all subsequent proceedings within the exclusive jurisdiction of the court is in the place where the initial proceeding occurred, unless the initial proceeding has been transferred as provided in section 524.1–303 or (c) of this section.

Ms. Congdon was domiciled in St. Louis County. Venue for the estate proceeding was properly in that county.

Minn.Stat. § 524.1–303 (1980) provides the place of venue for other than estate proceedings, as follows:

(a) Where a proceeding under this chapter could be maintained in more than one place in this state, the court in which the proceeding is first commenced has the exclusive right to proceed.

(b) If proceedings concerning the same estate, protected person, conservatee, or ward are commenced in more than one court of this state, the court in which the proceeding was first commenced shall continue to hear the matter, and the other courts shall hold the matter in abeyance until the question of venue is decided, and if the ruling court determines that venue is properly in another court, it shall transfer the proceeding to the other court.

Appellant asserts that because a Minn.Stat. § 524.2–803 (1980) action was first commenced in the Hennepin County District Court declaratory judgment action, that court should continue to hear the matter. Respondents disagree. They contend that the St. Louis County Probate Court has jurisdiction to resolve the Minn.Stat. § 524.2–803 (1980) issue.

In *Leslie v. Minneapolis Society of Fine Arts*, 259 N.W.2d 898 (Minn.1977), we considered a jurisdictional conflict between a district court (in a declaratory judgment action) and a county probate court regarding the distribution of trust proceeds. This court stated:

As a general rule, a probate court also has jurisdiction to exercise *all incidental powers* which are necessary for an effective exercise of those powers committed exclusively to its jurisdiction. * * * Perhaps the most interesting example of an incidental power occurred in *Vesey v. Vesey*, 237 Minn. 10, 53 N.W.2d 809 (1952), where we held that *a probate court had subject matter jurisdiction to determine whether a decedent's death had been feloniously caused* by his widow, a fact which, if proven, would preclude her from taking an inheritance under the decedent's will. The rule which emerges from these cases and others is that "*probate courts possess superior and general jurisdiction*, and have implied power to do whatever is reasonably necessary to carry out powers expressly conferred."

*Id.* at 903 (emphasis added; footnote omitted).

We also commented on the probate court's exclusive jurisdiction in *Vesey v. Vesey*, 237 Minn. 10, 53 N.W.2d 809 (1952), in which we stated that:

Since the probate court has *exclusive original* jurisdiction to adjudicate and determine whether a person qualifies as an heir, devisee, or legatee who may lawfully take * * * it follows that the district court is wholly without * * * jurisdiction * * *.

\*     \*     \*     \*     \*     \*

* * * a person cannot be an *heir* if he has feloniously taken the decedent's life. It follows that an *original* adjudication of whether a person is disqualified under [the predecessor to § 2–803] from inheriting from a decedent on the alleged ground of having feloniously taken the decedent's life is a determination of heirship * * *; as such, it involves an exercise of original jurisdiction, which belongs *exclusively to the probate court.*

*Id.* at 13–15, 53 N.W.2d at 812 (emphasis added in part). Based on these considerations, it is clear that the Minn.Stat. § 524.2–803 (1980) action should be heard in the St. Louis County Probate Court.

2. The second issue we must decide is whether the St. Louis County Probate Court erred by admitting the December 29, 1976, will to probate.[7]

The judicial officer of the St. Louis County Probate Court presided over a four-day trial on the validity of the December 29, 1976, will. The trial was initiated by appellant's allegations that Ms. Congdon lacked testamentary capacity when she executed the will; that the will was the subject of undue influence; and, finally, that the will had not been properly executed.[8]

■ With regard to appellant's first allegation, a testator will be found to have testamentary capacity if when making the will the testator understands "the nature, situation, and extent of his property and the claims of others on his bounty or his remembrance, and he [is] able to hold these things in his mind long enough to form a rational judgment concerning them." *In re Estate of Healy,* 243 Minn. 383, 386, 68 N.W.2d 401, 403 (1955). The above-quoted definition of testamentary capacity was explained in *In re Estate of Jenks,* 291 Minn. 138, 189 N.W.2d 695 (1971), in which we stated that "[i]t is the generally recognized rule that testamentary capacity requires only that the testator have capacity to know and understand the nature and extent of his bounty, as distinguished from the requirement that he have actual knowledge thereof." *Id.* at 141, 189 N.W.2d at 697.

■ With regard to testamentary capacity, there was considerable testimony concerning a stroke Ms. Congdon suffered in 1965. As a result of the stroke the right side of her body was paralyzed, and she developed a language difficulty known as aphasia. Ms. Congdon suffered from both expressive and receptive aphasia and as result she had difficulty reading, would sometimes have trouble understanding what was said to her, and had difficulty expressing herself. Occasionally she confused words, saying "no" when she meant "yes," and often had difficulty articulating her thoughts.

Notwithstanding the stroke and its related problems, there was testimony that Ms. Congdon understood what was said to her, and enjoyed conversation. There was also

---

**7.** The probate court sat without a jury. In such cases the scope of this court's review is established by Minn.R.Civ.P. 52.01, which provides in part:

> Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

This court has stated that a trial court's findings are "clearly erroneous" only if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Estate of Balafas,* 293 Minn. 94, 96, 198 N.W.2d 260, 261 (1972). *See also In re Estate of Lea,* 301 Minn. 253, 222 N.W.2d 92 (1974).

**8.** The burden of proof in contested will cases is set forth in Minn.Stat. § 524.3–407 (1980). That statute states:

> In contested cases, petitioners who seek to establish intestacy have the burden of establishing prima facie proof of death, venue and heirship. Proponents of a will have the burden of establishing prima facie proof of due execution in all cases, and, if they are also petitioners, prima facie proof of death and venue. Contestants of a will have the burden of establishing lack of testamentary intent or capacity, undue influence, fraud, duress, mistake or revocation. Parties have the ultimate burden of persuasion as to matters with respect to which they have the initial burden of proof.

Respondents, therefore, have the burden of making a prima facie showing that the will was properly executed. Appellant has the burden of proving undue influence and lack of testamentary capacity.

considerable testimony that, given a careful explanation, Ms. Congdon was capable of understanding the will in question.[9]

There was conflicting testimony regarding Ms. Congdon's memory. Although she never referred to her employees by name, and often forgot promises made to charitable organizations, Ms. Congdon remembered where specific items of household furniture were purchased, remembered the names of her grandchildren, remembered street directions, and remembered and was able to relate aspects of family history. In addition, Ms. Congdon frequently played cards and beat most of her opponents.

■ Upon review of the entire record it is clear that the St. Louis County Court Probate Division's decision regarding testamentary capacity is supported by substantial evidence.[10] Notwithstanding this evidence, appellant argues that the trial court erred in several other respects regarding testamentary capacity. Appellant argues that Ms. Congdon could not possess testamentary capacity because she was the subject of a conservatorship. However, because testamentary capacity is a less stringent standard than the capacity to contract, it is not inconsistent for the subject of a conservatorship to have sufficient capacity to execute a will. *In re Estate of Jenks*, 291 Minn. 138, 189 N.W.2d 695 (1971).

■ Similarly, there is no merit to appellant's argument that the trial court erred by failing to adopt the opinion of the only expert witness testifying on the issue of testamentary capacity. Expert opinion testimony is not conclusive, but is merely evidence to be weighed and considered by the trier of fact.[11] *Sandhofer v. Abbott-Northwestern Hospital*, 283 N.W.2d 362, 367 (Minn.1979); *Alstores Realty, Inc. v. State*, 286 Minn. 343, 176 N.W.2d 112 (1976).

We also reject appellant's argument that the trial court erred by admitting into evidence a vicarious admission regarding Ms. Congdon's mental capacity. The record discloses that the statement was not received because it was an admission, but because the statement was made in a proceeding the transcript of which was received into evidence. Appellant agreed to the introduction of the entire transcript and is therefore estopped from arguing that it was inadmissible. Thus, we hold that the trial court did not err in finding that Ms. Congdon had testamentary capacity when she executed her 1976 will.

■ Appellant's second major argument in support of her contention that the will is invalid is that Ms. Congdon was unduly influenced. Appellant's undue influence argument is based on the contention that Ms. Congdon was susceptible to sug-

---

9. In an attempt to show that Ms. Congdon lacked testamentary capacity, appellant introduced evidence regarding a 1974 lawsuit brought by the American State Bank of Bloomington on a note signed by Ms. Congdon and appellant. Ms. Congdon's attorney defended the action by arguing that Ms. Congdon's signature was obtained by undue influence and that she lacked capacity to enter into the contract. However, Ms. Congdon's attorney stated that he dropped the lack-of-capacity defense after obtaining information about Ms. Congdon's mental state from her personal physician. The lawsuit was settled.

A similar lawsuit was brought by the Marquette National Bank of Minneapolis on a note signed by appellant and guaranteed by Ms. Congdon. This action was also settled. The settlement agreement, which appellant signed, recited that the guarantee was obtained by "false pretense and false representation."

10. Appellant cites several cases which she contends require a finding that Ms. Congdon

lacked testamentary capacity. For example, appellant argues that in *In re Estate of Healy*, 243 Minn. 383, 68 N.W.2d 401 (1955), the existence of arteriosclerosis and senile dementia alone prevented the proponents of a will from carrying the burden of proof. However, in *Healy* this court indicated that since there was evidence which could support a finding either way, the trial court's decision would not be reversed. Each of the cases cited by appellant made reference to a specific condition only for the purpose of providing an evidentiary basis on which to affirm the trial court. *See also In re Estate of Palmer*, 238 Minn. 549, 57 N.W.2d 409 (1953); *In re Estate of Dahn*, 208 Minn. 86, 292 N.W. 776 (1940).

11. In addition, the trial court properly received into evidence lay opinion testimony regarding testamentary capacity. *See In re Estate of Palmer*, 238 Minn. 549, 57 N.W.2d 409 (1953).

gestion and did not initiate the preparation of the 1976 will.[12] In order to show undue influence:

> The evidence must go beyond suspicion and conjecture and show, not only that the influence was in fact exerted, but that it was so dominant and controlling of the testator's mind that, in making the will, he ceased to act of his own free volition and became a mere puppet of the wielder of that influence.

*In re Estate of Pundt*, 280 Minn. 102, 104–05, 157 N.W.2d 839, 841 (1968), quoting *In re Estate of Reay*, 249 Minn. 123, 126, 81 N.W.2d 277, 280 (1957). Although it is true that Ms. Congdon was susceptible to suggestion and did not initiate the preparation of her 1976 will, there is no evidence to show that the influence was of a degree "to dominate and control" Ms. Congdon's mind. Consequently, Ms. Congdon cannot be said to have been unduly influenced.

Appellant also argues that Ms. Congdon's will is defective because Ms. Congdon did not intend the December 29, 1976, instrument to be her last will and testament. Appellant argues that Ms. Congdon lacked testamentary intent because she was not questioned about the disposition of all her assets; the explanation of the will was brief, considering the size of her estate; and because Ms. Congdon did not clearly indicate that she intended the will to be her last will and testament.

The dispositive provisions of the 1968 and 1976 wills are nearly identical. This obviated the need to question Ms. Congdon with regard to the disposition of all her assets and explains how the will could be summa-

rized within 45 minutes. The evidence is clear that each article was explained to Ms. Congdon. When asked if the will comported to her desires, she stated, "Yes it did." Furthermore, Ms. Congdon reaffirmed her testamentary intent when she executed a memorandum disposing of personal property. Appellant has not met the burden of proving that Ms. Congdon lacked testamentary intent in executing the 1976 will.

Appellant's final argument with regard to the validity of the will is that the will was invalidly executed. The requirements of due execution are set forth in Minn.Stat. § 524.2–502 (1980) as follows:

> Except as provided for writings within section 524.2–513 and wills within section 524.2–506, every will shall be in writing signed by the testator or in the testator's name by some other person in the testator's presence and by his direction, and shall be signed by at least two persons each of whom witnessed either the signing or the testator's acknowledgement of the signature or of the will.

*Id.* On its face the will appears to be properly executed. Appellant points out, though, that there is conflicting testimony as to who witnessed the will. Consequently, appellant argues that respondents have not made a "prima facie" case of due execution. Because there is sufficient testimony that those who witnessed the will were in fact present and did execute the will as witnesses, this contention is without merit. Furthermore, Ms. Congdon's will was self-proved, in compliance with Minn.Stat. § 524.2–504 (1980). Under this statute, the use of a self-proved will establishes a prima facie case of due execution.

---

**12.** The preparation of the 1976 will was initiated by the recommendation of William Van Evera and Tom Congdon, the conservators of Ms. Congdon's estate. Neither stood to gain from the proposed changes to Ms. Congdon's will; their primary concern was the possibility that the "Brule" property (a retreat located on a river in Wisconsin) could fall into the hands of Mrs. Caldwell's creditors. It was proposed that the will be changed so that the "Brule" property could be placed in trust for the benefit of appellant's children and thus be protected from appellant's creditors. Ms. Congdon agreed to this change.

The conservators retained Joseph B. Johnson to review Ms. Congdon's will and, together with the conservators, Mr. Johnson recommended that the will also be changed to reflect the Congdon living trust, which was established after the 1968 will; to allow Ms. Congdon greater flexibility in disposing of personal property by memorandum; and to increase the size of two bequests to employees of Ms. Congdon. Upon meeting with Mr. Johnson, Ms. Congdon agreed that the bequests should be increased, and established the amounts of the increase.

Upon review of the entire record, given the burden of proof and the appropriate scope of review, the evidence is sufficient to support the judicial officer's decision to admit the December 29, 1976, will to probate.

■ 3. Appellant argues that her acquittal in the murder trial of her mother precludes a civil action to determine her entitlement to benefits from the trusts[13] and the estate. Appellant reasons that Minn.Stat. § 524.2–803 (1980) requires a criminal conviction rather than a civil determination of a felonious and intentional killing. Appellant further argues that a second trial is prohibited by double jeopardy, collateral estoppel and res judicata.

At first glance, the separate sections of Minn.Stat. § 524.2–803 (1980) seem to create an ambiguity as to the availability of a separate civil proceeding. On one hand, section (a) of § 524.2–803 refers to an "heir or devisee who *feloniously* and intentionally kills,"[14] thus implying that a criminal conviction is necessary (emphasis added).[15] *See generally Travelers Insurance Co. v. Thompson*, 281 Minn. 547, 163 N.W.2d 289 (1968), *cert. denied*, 395 U.S. 161, 89 S.Ct. 1647, 23 L.Ed.2d 175 (1969). On the other hand, Minn.Stat. § 524.2–803(e) (1980) provides that in the absence of a conviction "the court may determine by a preponderance of evidence whether the killing was felonious and intentional." This section authorizes a civil trial.

In construing Minn.Stat. § 524.2–803 (1980), our decision in *Thompson* is instructive. There, a civil action was brought to

keep Thompson from receiving life insurance proceeds from his wife's death. Although Thompson was convicted of murdering his wife, he argued that the conviction was not conclusive proof in the ensuing civil action. The then-applicable statute, Minn. Stat. § 525.87 (1974),[16] provided, in part, that "[n]o person who feloniously * * * takes the life of another shall inherit * * * or take by devise * * *."

One issue in *Thompson* was whether a second civil trial was necessary. We concluded that for civil purposes a criminal conviction was conclusive proof of Mr. Thompson's involvement. The *Thompson* court relied, in part, on the proposition that a "criminal conviction necessarily establishes that the requirement of a greater degree of proof has been met and because the party bound by it had every opportunity and incentive to litigate the issue." *Id.* at 552, 163 N.W.2d at 293. In the instant case, appellant argues the opposite of this proposition, contending that failure to find her guilty beyond a reasonable doubt should be conclusive in a civil proceeding, even though there is a lesser degree of proof required in that proceeding.

When Minn.Stat. § 525.87 (1974) was repealed in 1975, the Uniform Probate Code section presently codified as Minn.Stat. § 524.2–803 (1980) was adopted in its place. That section codifies the *Thompson* holding regarding the conclusiveness of a felony conviction, and provides for a civil proceeding in the event of no conviction. Minn.

---

**13.** We find no merit in appellant's argument that she had a vested interest in the applicable trusts even before Ms. Congdon's death and therefore proceeds from the trusts are not subject to Minn.Stat. § 524.2–803 (1980). Under the terms of each of the trusts, appellant's remainder interest was not vested, but was contingent on appellant's surviving Ms. Congdon.

**14.** The state never claimed in the criminal action against appellant that appellant did the physical act of killing; the state's charge was based upon Minn.St. § 609.05, subd. 1 (1980). "Feloniously," as used in the statute, is intended in its historic sense and indicates that the criminal law concept as expressed in Minn. Stat. § 609.05, subd. 1 (1980), shall apply: "A

person is criminally liable for a crime committed by another if he intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime." The state failed to prove its criminal case against appellant, as reflected by the jury verdict of not guilty.

**15.** The North Dakota Supreme Court has interpreted "feloniously" in an identical statute, as not implying that a criminal felony conviction is necessary. *See In re Estate of Josephson*, 297 N.W.2d 444 (N.D.1980).

**16.** Minn.Stat. § 525.87 (1974) was repealed by Act of June 5, 1975, ch. 347, § 144, 1975 Minn. Laws 1006, 1104.

Stat. § 524.2–803(e) (1980). The official comments to Uniform Probate Code § 2–803 state that a defendant found not guilty in a criminal proceeding may subsequently be found by the probate court to have feloniously and intentionally killed the decedent.[17]

Appellant argues that even if Minn.Stat. § 524.2–803 (1980) were construed to permit a civil proceeding, a second trial would violate the principles of double jeopardy,[18] res judicata and collateral estoppel. Appellant cites numerous cases in which *the government,* after losing its criminal case, was prohibited from bringing a civil action to impose a penalty or forfeit property. *Coffey v. United States,* 116 U.S. 436, 6 S.Ct. 437, 29 L.Ed. 681 (1886); *Lowther v. United States,* 480 F.2d 1031 (10th Cir. 1973); *United States v. One 1956 Ford Fairlane Tudor Sedan, Motor No. M6ET100140,* 272 F.2d 704 (10th Cir. 1959); *United States v. Gully,* 9 F.2d 959 (S.D.N.Y. 1922). In *State v. Enebak,* 272 N.W.2d 27, 30 (Minn.1978), this court stated: "It is well established that the prohibition against double jeopardy does not preclude separate civil and criminal proceedings based on the same incident." *See also Yates v. United States,* 355 U.S. 66, 78 S.Ct. 128, 2 L.Ed.2d 95 (1957).

Appellant quotes extensively from *Coffey* and argues that *Coffey* and "its progeny" make it clear that a civil trial should be barred by res judicata. However, appellant fails to quote the following portion of the *Coffey* opinion:

> When an acquittal in a criminal prosecution in behalf of the Government is pleaded, or offered in evidence, by the same defendant, in an action against him by *an individual,* the rule does not apply, for the reason that the parties are not the same; * * *.

116 U.S. at 443, 6 S.Ct. at 441 (emphasis added). Moreover, the different degree of the burden of proof between criminal and civil cases also precludes application of the doctrine of "res judicata." *See United States v. National Association of Real Estate Boards,* 339 U.S. 485, 493, 70 S.Ct. 711, 716, 94 L.Ed. 1007 (1950); *Burns v. United States,* 200 F.2d 106 (4th Cir. 1952); *McDuffie v. Aetna Life Insurance Co.,* 160 F.Supp. 541 (E.D.Mich.1957), *aff'd* 273 F.2d 609 (6th Cir. 1960) (in both *McDuffie* and *Burns* an acquittal did not bar a subsequent civil action to determine whether the accused was entitled to life insurance proceeds).

Appellant further argues that respondents are collaterally estopped from bring-

---

**17.** The Uniform Probate Code comments to § 2-803 provide in part as follows:

> At first it may appear that the matter dealt with is criminal in nature and not a proper matter for probate courts. However, the concept that a wrongdoer may not profit by his own wrong is a civil concept, and the probate court is the proper forum to determine the effect of killing on succession to property of the decedent. There are numerous situations where the same conduct gives rise to both criminal and civil consequences. A killing may result in criminal prosecution for murder and civil litigation by the murdered person's family under wrongful death statutes. While conviction in the criminal prosecution under this section [is] treated as conclusive on the matter of succession to the murdered person's property, acquittal does not have the same consequences. This is because different considerations as well as a different burden of proof enter into the finding of guilty in the criminal prosecution. *Hence it is possible that the defendant on a murder charge may be found not guilty and acquitted, but if the same person claims as*

> *an heir or devisee of the decedent, he may in the probate court be found to have feloniously and intentionally killed* the decedent and thus be barred under this section from sharing in the estate. An analogy exists in the tax field, where a taxpayer may be acquitted of tax fraud in a criminal prosecution but found to have committed the fraud in a civil proceeding. In many of the cases arising under this section there may be no criminal prosecution because the murderer has committed suicide.

Uniform Probate Code § 2–803, Comments (emphasis added).

**18.** The prohibition against double jeopardy finds its origin in both the Minnesota and United States Constitutions. Minn.Const. art. I, § 7, provides in part: "[N]o person shall be put twice in jeopardy *of punishment* for the same offense * * *." (Emphasis added.) U.S.Const. amend. V provides in part: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb * * *."

ing a Minn.Stat. § 524.2–803 (1980) proceeding. In *Travelers Insurance Co. v. Thompson*, 281 Minn. 547, 551, 163 N.W.2d 289, 292 (1968) *cert. denied*, 395 U.S. 161, 89 S.Ct. 1647, 23 L.Ed.2d 175 (1969), this court defined collateral estoppel as a form of res judicata whereby a former judgment is conclusive in a later suit between *the same parties* or their privies. Respondents, in the instant case, were not parties in the criminal case. For this reason respondents are not collaterally estopped from raising issues determined in appellant's criminal trial.

We therefore hold that a civil proceeding is proper to determine appellant's entitlement to receive from the various trusts and to inherit under Ms. Congdon's will. Although this result may seem unduly harsh at first blush, that conclusion is compelled by the statutory language, the case law, and the comments to the Uniform Probate Code.

■ Appellant attempts to avoid the application of Minn.Stat. § 524.2–803 (1980) by arguing that Colorado law controls the effect of a homicide on beneficiary succession. Minn.Stat. § 524.1–301 (1980) establishes the territorial application of Minnesota Probate Code Chapters 524 and 525. That statute provides:

> Except as otherwise provided in chapter 524, chapters 524 and 525 apply to (1) the affairs and estates of decedents, missing persons, and persons to be protected, domiciled in this state, and (2) the property of nonresident decedents located in this state or property coming into the control of a fiduciary who is subject to the laws of this state.

Minn.Stat. § 524.1–302 (1980) establishes the subject matter jurisdiction of the probate courts as follows:

> (a) To the full extent permitted by the constitution, the court has jurisdiction over all subject matter relating to estates of decedents, including construction of wills and determination of heirs and successors of decedents.

> (b) The court has full power to make orders, judgments and decrees and take all other action necessary and proper to administer justice in the matters which come before it.

Ms. Congdon was domiciled in this state; therefore, Minnesota probate law, including Minn.Stat. § 524.2–803 (1980), applies to her estate. Appellant argues that even if Minn. Stat. § 524.2–803 (1980) were applicable, that statute should not control because Ms. Congdon's estate is not at issue. Instead, appellant contends that the central issue is appellant's status as a beneficiary. Appellant asserts that her "status" as a beneficiary is determined by the law of her domicile, Colorado.[19]

In *Milkovich v. Saari*, 295 Minn. 155, 161, 203 N.W.2d 408, 412 (1973), this court adopted a method for resolving conflict of laws questions. The analysis involves the following "choice-influencing considerations": (1) predictability of result; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; (5) application of the better rule of law.

In applying these factors, including the application of the Uniform Probate Code— which is the law in a majority of jurisdictions—we hold that Minnesota law applies.

■ 4. Appellant also contends that the statute of limitations bars respondents from bringing a Minn.Stat. § 524.2–803 (1980) action and, concurrently, that such proceedings are prohibited since they were not initiated within the deadline ordered by the probate court.

---

19. Appellant cites *Kandelin v. Social Security Bd.*, 136 F.2d 327 (2d Cir. 1943) (marital status); *In re Frederick's Estate*, 241 Minn. 55, 62 N.W.2d 361 (1954) (contract for adoption); *In re Davidson's Will*, 223 Minn. 268, 26 N.W.2d 223 (1947) (age of majority); *Meisenhelder v. Chicago N.W. Ry.*, 170 Minn. 317, 213 N.W. 32 (1927) (marital status), as authority to support the contention that the issue in this case is one of "status," and that, therefore, Colorado law applies. None of these cases, however, are persuasive because their facts are far different from those in the instant case.

Whether the two- or six-year statute of limitations applies seems immaterial, since the proper actions were brought well within any time limits involved. The record discloses that Minn.Stat. § 524.2–803 (1980) was raised in both the petition of the children filed on September 2, 1977, and the petition of the trustees filed on November 2, 1977.

The further contention that said proceedings are barred by failing to come within the deadline set by the probate court also is unpersuasive. As already noted, on *July 27, 1978*, the probate court restrained the trustees from making distributions to appellant until her involvement in the homicide was determined. The court provided that "such prohibition shall remain until the determination is made, but not more than one year from the date hereof, unless a prior order of this court extending the prohibition is obtained." It is this provision that provides the basis for appellant's argument. On July 23, 1979, the county probate court terminated the restraint but provided that petitioners could reapply for relief in the event of § 524.2–803 proceedings. On July 25, 1979, the trustees petitioned for an order restraining distributions "pending a civil determination." *On July 26, 1979, such an order was granted.* In light of this procedural history, appellant's argument has no merit, since the July 26, 1979, order came within one year of the July 27, 1978, order.

The final procedural consideration is appellant's assertion that she has a right to a jury trial to determine if she feloniously and intentionally killed Ms. Congdon. Minn.Stat. § 524.1–306 (1980) provides:

(a) If duly demanded, a party is entitled to trial by jury in any proceeding in which any controverted question of fact arises as to which any party has a constitutional *right to trial by jury.*

(b) If there is no right to trial by jury under subsection (a) or the right is waived, the court in its discretion may call a jury to decide any issue of fact, in which case the verdict is advisory only. *Id.* (emphasis added.)

The constitutional right to a jury trial finds its origin in Article 1, section 4, of the Minnesota Constitution: "The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy." In *Rognrud v. Zubert*, 282 Minn. 430, 165 N.W.2d 244 (1969), this court interpreted that constitutional provision as follows:

We have often held that the only actions in which Minn.Const. art. 1, § 4, * * guarantee[s] the right to a jury trial are those which were conceived of as "legal," so that such a right existed with respect to them, at the time the Minnesota Constitution was adopted.

*Id.* at 433, 165 N.W.2d at 247.

Proceedings pursuant to Minn.Stat. § 524.2–803 (1980) did not exist at the time the Minnesota Constitution was adopted. There was no such remedy until 1935, when the statutory predecessor of Minn.Stat. § 525.87 (1980) was adopted. *See* Act of Mar. 29, 1935, ch. 72, § 193, 1935 Minn.Laws 108, 166–67 (current version at Minn.Stat. § 525.87 (1980)). For this reason, appellant does not have a right to a jury trial.

We therefore affirm the April 14, 1980, and the October 10, 1980, orders of the St. Louis County District Court, Appellate Division, and the August 15, 1980, dismissal of the Hennepin County District Court declaratory judgment action.

Affirmed.

TODD, Justice (concurring specially).

I agree with the result reached by the majority opinion, but I am troubled by the action taken by the trustees in this case.

As noted in the majority opinion, the trustees of the various trusts in this case petitioned the court for an order restraining distribution until the question of Marjorie Caldwell's involvement in the Congdon murder was resolved. I do not believe that the trustees acted properly when they filed this petition. We said in *In re Great North-*

*ern Iron Ore Properties*, 263 N.W.2d 610, 621 (Minn.1978), *cert. denied*, 439 U.S. 835, 99 S.Ct. 116, 58 L.Ed.2d 130 (1978), that "[i]t is fundamental trust law that trustees are under a legal duty to manage the trust 'with equal consideration for the interests of all beneficiaries'." Thus, as between the beneficiaries, the trustees must act as neutral stakeholders unless the trust instruments require them to do otherwise. Bringing a petition to prevent distribution of the trust proceeds to one of the beneficiaries is not a neutral action. In *In re Estate of Nelson*, 194 Minn. 297, 260 N.W. 205 (1935), we stated that an administratrix of an estate had no standing to challenge a distribution order, reasoning:

> A mere stakeholder or one whose duty it is simply to safeguard the funds of the estate has no interest in the decree of distribution other than to turn over to the beneficiaries named therein the funds in his hands and cannot, at the expense of the estate, take part in controversies arising between claimants.

*Id.* at 299, 260 N.W. at 206. This same principle is generally applicable to trustees. *See* 2 A. Scott, The Law of Trusts § 183, at 1473 (1967). ·

Therefore, I do not believe that the trustees should have petitioned for an order restraining distribution; they also should not participate in any future disputes between the beneficiaries.

YETKA, Justice (concurring specially).

I join in the special concurrence of Mr. Justice Todd.