In re the **ESTATE OF Gerda ANDERSON, Deceased.**

No. C9–85–1859.

Court of Appeals of Minnesota.

April 1, 1986.

Jeffrey D. Kuhn, Glenwood, for respondent.

Alan Dorfman, Minneapolis, for appellant.

Considered and decided by CRIPPEN, P.J., and WOZNIAK and SEDGWICK, JJ., with oral argument waived.

## OPINION

SEDGWICK, Judge.

Gerda Rose McGillivary, niece of decedent Gerda Anderson, appeals from an order denying admission of Anderson's will to probate. She claims the probate court erred in finding lack of testamentary capacity at the time Anderson executed her last will. We affirm.

## FACTS

Gerda Anderson, 90, died December 23, 1984. She was survived by 10 nieces and nephews.

Anderson lived alone in California from 1975, when her husband died, until February 1984 when she returned to Minnesota with her niece, Gerda Rose McGillivary.

McGillivary, proponent of the will, testified that as she and her husband were preparing to return to Minnesota from a California visit, Anderson suddenly decided to return with them. Appellant testified that she and Anderson both tried unsuccessfully to reach Carolyn Devine, another niece, who also lived in California.

McGillivary learned that Devine recently commenced conservatorship proceedings in California. Devine and Anderson had a close relationship and visited regularly. Anderson recovered from a serious illness at Devine's home. Anderson gave Devine power of attorney over various bank accounts.

In December 1976, a California attorney prepared Anderson's will, which specifically bequeathed jewelry and clothing to Devine and McGillivary and $1,000 to nephew Harold Anderson. The residue was to be distributed in equal shares to nine of her nieces and nephews. The same day Anderson signed her 1976 will she nominated Devine to be her conservator. Devine testified that after making the will Anderson often discussed her intention to leave her estate to her nieces and nephews and did not indicate any intent to change the provisions of the 1976 will. She said these discussions took place several times between 1976 and the time Anderson moved to Minnesota.

Devine testified that Anderson managed her own financial affairs, consisting of various bank accounts and stocks, until late 1983 when she began having problems managing her affairs and showed signs of confusion. She mistook advertisements for bills and then paid these "bills" with a check. She also forgot the location of her bank accounts. As a result of these problems, Devine petitioned for conservatorship in January 1984. This conservatorship was never established in California because of the sudden move to Minnesota.

Anderson developed health problems shortly after her arrival in Minnesota. In February 1984 she saw Dr. Robert Bosl, a family practitioner in Starbuck, Minnesota for pneumonia. In May 1984 Bosl prescribed anti-psychotic medication for her. Shortly after this Anderson was diagnosed as having chronic senile dementia. She was placed in Minnewaska Lutheran Home in Starbuck. At the nursing home she exhibited signs of confusion, disorientation, and declining mental functions.

During Anderson's stay at the nursing home, McGillivary took her to an attorney who prepared the will at issue here. It was signed by decedent on August 30, 1984 at the nursing home in Starbuck and witnessed by two nursing home personnel. The only heir of decedent present was McGillivary. This will bequeaths Anderson's entire estate to McGillivary and neph-

ew Lowell Hanson in equal shares. No mention was made of other nieces and nephews.

Dr. Bosl saw decedent on September 5, 1984 and determined that she still suffered from senile dementia, an altered thought process. Devine testified that she called Anderson on her birthday on September 8th and Anderson didn't remember her. She also said that decedent thought she was in a shrine temple at a birthday party. Decedent was discharged from the nursing home to McGillivary's care on November 30, 1984. She was hospitalized from December 17th until her death on December 23rd.

Appellant petitioned for formal probate of the August 30, 1984 will. Respondent objected to probate of the will on grounds of lack of testamentary capacity and a claim of undue influence and duress. Following trial, the court held that decedent Gerda Anderson lacked testamentary capacity on August 30, 1984.

## ISSUE

Is the trial court's finding that decedent lacked testamentary capacity when she executed a will on August 30, 1984, clearly erroneous?

## ANALYSIS

The court's findings of fact will be set aside only if they are clearly erroneous, Minn.R.Civ.P. 52.01; *In re Estate of Olsen,* 357 N.W.2d 407, 411 (Minn.Ct.App.1984) (citations omitted). Findings are "clearly erroneous" only if

> "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

*In re Estate of Congdon,* 309 N.W.2d 261, 266 n. 7 (Minn.1981) (quoting *In re Estate of Balafas,* 293 Minn. 94, 96, 198 N.W.2d 260, 261 (1972).

Execution of a valid will requires that the testator have testamentary capacity at the time of execution.

A testator will be found to have testamentary capacity if, when making the will, he understands "the nature, situation, and extent of his property and the claims of others on his bounty or his remembrance, and he [is] able to hold these things in his mind long enough to form a rational judgment concerning them."

*In re Estate of Prigge,* 352 N.W.2d 443, 444 (Minn.Ct.App.1984) (citations omitted).

Minn.Stat. § 524.3–407 (1984) provides: Proponents of a will have the burden of establishing prima facie proof of due execution in all cases, and, if they are also petitioners, prima facie proof of death and venue. Contestants of a will have the burden of establishing lack of testamentary intent or capacity, undue influence, fraud, duress, mistake or revocation. Parties have the ultimate burden of persuasion as to matters with respect to which they have the initial burden of proof.

Factors to be considered by the trial court in determining whether a testator possesses the requisite testamentary capacity include:

1. Reasonableness or naturalness of the property disposition. *In re Estate of Jensen,* 185 Minn. 284, 240 N.W. 656 (1932).

2. Testators conduct within a reasonable time before and after execution of the disputed will. *McAllister v. Rowland,* 125 Minn. 27, 144 N.W. 412 (1914).

3. Prior adjudication involving testator's mental capacity. *In re Estate of Congdon,* 309 N.W.2d at 267.

4. Expert testimony pertaining to the mental and physical condition of the testator. *Id.*

It is well-settled that the evidence and the inferences must be viewed in the light most favorable to the trial court's decision. *In re Estate of Healy,* 243 Minn. 383, 386, 68 N.W.2d 401, 403 (1955).

The trial court determined that Anderson lacked testamentary capacity on August 30, 1984 based on five grounds: 1) she

had senile dementia, which is progressive, chronic and degenerative, causing lack of insight, short term memory lapses and inability to make rational decisions; 2) her mental condition, which necessitated the conservatorship established in Minnesota and the prior conservatorship commenced in California; 3) signs of deficient mental capacity such as lack of alertness and orientation; 4) the inconsistency between the terms of the 1984 will and decedent's previously declared intentions in the 1976 will; and 5) the abrupt and unexplained move of the decedent from California to Minnesota in the middle of winter.

McGillivary explained the sudden change in terms of the two wills was because she had always been extremely close to her aunt and that Anderson considered McGillivary as her own daughter.

There was testimony that on good days Anderson appeared lucid and recognized those around her; on the bad days, decedent became confused and disoriented. The nursing home administrator and the director of nursing, said they spoke with Anderson frequently between February and December 1984. They testified she was not confused or disoriented and seemed to understand the significance of what she was doing on August 30, 1984. The administrator said he read each provision of the will to decedent before she signed it. She answered "yes" when asked if she understood and agreed to the provisions.

Dorothea Refasl, a nurse who regularly cared for decedent, testified Anderson often seemed disoriented and confused, harassed other nursing home residents, wandered outside and once pulled a roommate out of bed. Refasl testified Anderson frequently walked through the halls of the home holding onto the railings and talked about "the nice ship" she was on.

Appellant argues that although Anderson had periods of confusion, forgetfulness and disorientation, she was having a good day on August 30, 1984 and had the required testamentary capacity to make a will.

Dr. Bosl testified that senile dementia is a

chronic progressive degenerate disease involving the brain, by chronic meaning all the time; progressive meaning gradually getting worse over a matter of months or sometime years, degenerative meaning brain cells dying.

He testified that although symptoms may not always be noticeable from day to day, the brain cells cannot be replaced or thought processes restored. Those suffering from senile dementia often answer "yes" to questions put to them in an attempt to be agreeable, however, they lack insight into their actions and do not fully understand and appreciate the consequences of their actions. Dr. Bosl's opinion was that Gerda Anderson could not make a rational decision during the time he cared for her, both before and after August 30, 1984.

There is ample evidence to support the trial court's finding of lack of testamentary capacity.

The supreme court indicated that where evidence can support a finding either way, the trial court's decision will not be reversed. *See In re Estate of Healy*, 243 Minn. 383, 386, 68 N.W.2d 401, 403 (1955).

Appellant correctly contends that the subject of a conservatorship does not necessarily lack testamentary capacity. *See In re Estate of Congdon*, 309 N.W.2d 261, 267 (Minn.1981). She argues that the doctor's expert testimony is not conclusive of testamentary capacity but only evidence to be weighed and considered. *Id.*

These arguments are correct but not dispositive of this case. The trial court weighed the evidence and based its decision on a combination of factors, all of which are supported by the record.

**DECISION**

The trial court's finding that decedent lacked testamentary capacity is not clearly erroneous.

Affirmed.