In re the ESTATE OF Elsie
LANGE, Deceased.

No. C6–86–1215.

Court of Appeals of Minnesota.

Dec. 16, 1986.

Stephen C. Rathke, Borden, Steinbauer, Rathke & Krueger, Brainerd, for respondent.

William R. Skolnick, Meshbesher, Singer & Spence, Ltd., Minneapolis, for appellants.

Heard, considered and decided by CRIPPEN, P.J., and LANSING and LESLIE, JJ.

## OPINION

LANSING, Judge.

This appeal is from an order admitting Elsie Lange's will to probate. The contestants claim that Lange lacked testamentary capacity and was unduly influenced in the making of her will. Contestants also claim the trial court should have granted a mistrial because the trial judge was biased by information not admitted as evidence. We affirm.

## FACTS

Elsie Lange was born on October 30, 1896, and died on June 28, 1985, at the age of 88. She had three children, Raymond Lange, Victor Lange, and Annabelle Hertling.

Lange executed her first will on February 21, 1966. In that will, she left her property to her children as follows:

(1) A 240–acre farm to Victor Lange;

(2) A 286–acre farm to Raymond Lange;

(3) Lange's homestead in Redwood Falls and an 80–acre farm to Hertling;

(4) The remaining property (personal) to Victor Lange and Raymond Lange in equal shares.

Victor Lange died on October 30, 1973. His four children are the contestants. On May 21, 1975, Lange executed her second and last will. By that time, Lange had sold her homestead in Redwood Falls and moved to a nursing home. She left the remaining property to her surviving children and Victor Lange's children as follows:

(1) An 80–acre farm (previously left to Hertling) to Victor Lange's children, share and share alike;

(2) A 286–acre farm to Raymond Lange (same as 1966 will);

(3) A 240–acre farm to Hertling (previously left to Victor Lange);

(4) The rest of her property (personal) in equal shares to Raymond Lange and Hertling.

Lange remained in the nursing home from April 17, 1972, until her death 13 years later. Hertling testified that Lange required nursing home care because of her physical health, particularly her diabetes. Raymond Lange testified that Elsie Lange was too confused to care for herself. The admitting physician described Lange's mental condition as senile.

In 1974 the Renville County Court appointed Raymond Lange and Hertling co-conservators of Elsie Lange's property. The reason for the conservatorship is disputed. Hertling claims that it was instituted because her mother was no longer interested in business affairs, and Raymond Lange claims that it was necessary because his mother was incompetent.

The conservators sued a farm tenant of Elsie Lange's who had negotiated a lease advantageous to himself. The conservators' attorney advised them by letter an expert would be needed to testify that Elsie Lange was incompetent to sign the lease. Expert testimony was never obtained because the lawsuit was settled.

On May 21, 1975, Raymond Lange and Hertling accompanied Elsie Lange to the Olivia law office of Ronald Selander. Each claims that the other scheduled the appointment. They agree that they remained in the waiting room during their mother's conference with Selander.

Selander testified that he met with Elsie Lange that day. He knew she was under a conservatorship and asked questions to ascertain her competence. These questions related to Elsie Lange's age, heirs, property, the contents of her 1966 will and the changes she desired in a new will. To the best of his recollection, Lange was alert and answered all his questions. She remembered the contents of her 1966 will and was able to describe the changes she wanted in a new will. After the conversation, the will was typed and Selander read it to her paragraph by paragraph. He believed she understood the changes and agreed to them.

Two secretaries from the law office witnessed the execution of the will.

Hertling testified that her mother did not suffer from significant loss of mental capacity until shortly before her death. Hertling claimed to be unaware of the 1966 will and did not learn of the contents of the 1975 will until several days after its execution. Hertling's husband testified that Elsie Lange's mental capacity was not diminished until shortly before her death.

The nursing staff at the nursing home maintained a chart in which they made daily notations on Lange's physical and mental condition. Few indications of mental confusion or weakness were noted. Toward the end of Elsie Lange's life, state law required the staff to complete a "Vulnerable Adult Assessment." The forms indicate she was vulnerable only "by reason of extremely poor eyesight and dependence on wheelchair."

Four nurses who worked at the nursing home while Lange was a resident testified at trial. They described Lange as neat and active in playing cards and checkers. They testified that she was mentally alert, cooperative, and oriented to time and place. They denied that she suffered from senility. In addition, two housekeepers described Lange as "a pretty sharp person" and possessed of a "pretty good mental state." Lange talked about the property she owned to one of the housekeepers. All six of these staff members saw her on a daily basis during 1975.

Three of the contestants, their mother, and Raymond Lange testified that Elsie Lange was not competent to make a will. They stated she often forgot who they were. Raymond Lange testified that on the date she executed the 1975 will, his mother was incapable of making a will and that on numerous occasions after 1975 she told him she wanted Victor's children to get the 240–acre farm. The children also testified that after their father's death, they did not receive Christmas presents from Lange, even though she inquired whether they had received them.

Dr. Milton Hanson testified that he saw Elsie Lange on a monthly basis from 1973 to 1980. He stated that Elsie Lange suffered from senile dementia during the entire time he treated her. However, her chart did not list senile dementia as a diagnosis. At one point he stated that she was fairly senile and later said she "had at least an element of senile dementia and that she at times was confused." He described the characteristics of senile dementia as memory loss, confusion, defective judgment, and poor memory. He said this was demonstrated by Lange's reluctance to follow his instructions and delusions relating to her medical treatment. He did not talk to her about her family or financial affairs and conducted no tests relating to her mental condition. Dr. Hanson believed Elsie Lange was unable to make a rational disposition of her property at any time while he treated her.

Although Raymond Lange and Hertling were co-conservators, Hertling managed her mother's affairs alone. To reduce the impact of estate taxes, she made gifts of up to $10,000 a year to herself and Raymond Lange. She stated that her attorney, Robert Wurm, advised her to make the gifts. The trial judge, apparently troubled because the gifts were not authorized by the probate court, recessed and called the attorneys into chambers. The judge expressed dissatisfaction over the gifts, stating that he knew Wurm and believed Wurm would have advised Hertling to make such gifts.

Contestants' attorney requested that the comments be placed on the record. With a court reporter present, the judge repeated his comments on Wurm. Contestants' attorney moved for a mistrial and requested the judge's recusal. The judge stated:

> I would think that anyone coming to this community would be aware that in a small town attorneys know one another. * * * I also know Dr. Hanson. * * * [I]f I felt it was necessary to remove myself I would have done so. * * * I'm not biased nor am I prejudiced.

The motion was denied and the hearing continued.

On June 17, 1986, the court admitted Lange's 1975 will to probate. Contestants brought a motion for a new trial, which was denied.

## ISSUES

1. Did the trial court err in admitting Lange's 1975 will to probate?

2. Did the trial court err by refusing to grant a mistrial?

## ANALYSIS

### I

Contestants claim that Elsie Lange, because she suffered from senile dementia, lacked testamentary capacity to make a will on May 21, 1975, and that the will executed on that day was the result of Hertling's undue influence. The burden is on contestants to establish lack of testamentary capacity and undue influence. Minn.Stat. § 524.3–407 (1984).

In deciding testamentary capacity, the trial court was required to determine whether, when making the will, Lange understood "the nature, situation, and extent of [her] property and the claims of others on [her] bounty or [her] remembrance, and [was] able to hold these things in her mind long enough to form a rational judgment concerning them." *In re Estate of Healy,* 243 Minn. 383, 386, 68 N.W.2d 401, 403 (1955). As an appellate court, we cannot retry the facts. We can only make a review of the record to ascertain whether the facts are sufficient to support the trial court's ruling. Minn.R.Civ.P. 52.01. Upon review of the entire record, we conclude that the finding of requisite testamentary capacity is adequately supported by the evidence. Because it is not clearly erroneous, we cannot set the finding aside.

[redacted] Notwithstanding this evidence, contestants raise several specific allegations of error. They argue that Elsie Lange's lack of testamentary capacity is proved by the formation of her conservatorship. However, Elsie Lange's inability to negotiate a farm rental contract is not determinative of her testamentary capacity. A person under a conservatorship may have sufficient capacity to execute a will. *In the Matter of Estate of Congdon,* 309 N.W.2d 261, 267 (Minn.1981).

[redacted] Contestants also assign error to the trial court's failure to adopt Dr. Hanson's opinion, because he was the only expert witness testifying on the issue of testamentary capacity. Although expert testimony is valuable, it is not conclusive, but merely evidence to be weighed and considered by the trier of fact. *Congdon,* 309 N.W.2d at 267 (citing *Sandhofer v. Abbott-Northwestern Hospital,* 283 N.W.2d 362, 367 (Minn. 1979)). Other opinion evidence, including nurses who cared for Lange, showed that Elsie Lange's senile dementia, if present, had not reached the point where she lacked testamentary capacity.

[redacted] The trial court apparently relied on the testimony of attorney Selander, who determined Elsie Lange's testamentary capacity at the time the will was drafted. He interviewed her alone, asking questions designed to determine if she knew the extent of her property, the natural recipients of her estate, and the changes she desired in a new will. To Selander's satisfaction, Elsie Lange had testamentary capacity on May 15, 1975, when her will was executed. *See Matter of Estate of Rechtzigel,* 385 N.W.2d 827, 831 (Minn.Ct.App.1986). We hold that the trial court did not err in finding that Elsie Lange had testamentary capacity.

Contestants' second argument is that the will is invalid because Elsie Lange was unduly influenced. They contend that Hertling controlled her mother's finances and engineered the execution of the 1975 will. In order to show undue influence,

> [t]he evidence must go beyond suspicion and conjecture and show, not only that the influence was in fact exerted, but that it was so dominant and controlling of the testator's mind that, in making the will, [she] ceased to act of [her] own free volition and became a mere puppet of the wielder of that influence.

*Congdon,* 309 N.W.2d at 268 (quoting *In re Estate of Pundt,* 280 Minn. 102, 104–05, 157 N.W.2d 839, 841 (1968)).

■ Hertling had a close relationship with Lange, which would present an opportunity to exercise undue influence. There is, however, no strong evidence that anything more than opportunity for undue influence existed, and opportunity alone will not sustain a finding of undue influence. *In re Estate of Holden,* 261 Minn. 527, 533, 113 N.W.2d 87, 91 (1962). A close relationship between a testator and a beneficiary is not sufficient to prove undue influence. *See In re Estate of Marsden,* 217 Minn. 1, 11–12, 13 N.W.2d 765, 771 (1944). Contestants' share of Lange's estate decreased under her 1975 will, but they were not disinherited. Contestants claim that Hertling's failure to give them Christmas presents is evidence of her undue influence on Lange. Although this evidence may raise questions, it is not conclusive on the issue of undue influence in making her will. Hertling did not personally participate in the making of the 1975 will, and there is no evidence that Hertling induced her mother to make the new will.

The evidence is sufficient to support the trial court's decision to admit Elsie Lange's May 21, 1975, will to probate.

**II**

Contestants claim they were entitled to a mistrial for trial court bias occurring after the trial was in progress. They argue the trial judge used personal knowledge in assessing the credibility of Hertling's testimony. They claim the trial court's decision to believe Hertling's testimony about Wurm inclined the court to believe Hertling did not unduly influence her mother.

■ Minn.R.Civ.P. 63.02 incorporates the doctrine that a judge may not preside in a case if he or she has an interest in its determination or if he or she might be excluded for bias. Once the trial commenced, contestants could not, as a matter of law, demand a new judge. Bias or prejudice, to be disqualifying, must stem from an extrajudicial source and result in an

opinion on the merits on some basis other than what the judge learned from his participation in the case. *See Berger v. United States,* 255 U.S. 22, 31–35, 41 S.Ct. 230, 232–33, 65 L.Ed. 481 (1921).

■ The trial court's opinion on the actions of attorney Wurm does not directly relate to the testamentary capacity of Elsie Lange, nor does this statement show bias or predisposition in whether Hertling unduly influenced her mother. At most, it is one among a number of observations on credibility. The trial judge stated twice on the record that his decision was not influenced by information he knew about Wurm. The record does not sustain a determination of bias warranting a mistrial.

**DECISION**

We affirm the admission of Elsie Lange's last will to probate. Sufficient evidence supported trial court's determination that Elsie Lange had testimentary capacity on May 21, 1975, and was not unduly influenced in the making of that will. Judicial comments regarding conservatorship management were unrelated to the merits and were insufficient to show bias warranting a mistrial.

Affirmed.